[No. C042759. Third Dist. June 8, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
MANOLITO PESCADOR, Defendant and Appellant.

## [CERTIFIED FOR PARTIAL PUBLICATION*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of the Factual and Procedural Background and parts I., II.C., II.D., II.E., III., and IV. of the Discussion.

## COUNSEL

Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Matthew L. Cate and Jennifer M. Runte, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RAYE, J.**—Suspecting his wife, Norma Pescador, of infidelity, defendant Manolito Pescador fired 10 nails into her head with a nail gun, killing her. An information charged defendant with murder. (Pen. Code, § 187.)[1] The information also alleged defendant used a deadly weapon, the nail gun. (§ 12022, subd. (b)(1).) A jury found defendant guilty of murder and found the allegation true. Sentenced to 26 years to life, defendant appeals, contending: (1) the failure of the substitute trial judge to fully review the transcript deprived defendant of his right to a jury trial; (2) instructional error; (3) ineffective assistance of counsel; and (4) commentary by the trial court must be stricken from the abstract of judgment. The People concede the last contention and, in the unpublished portion of this opinion, we remand for a correction of the abstract of judgment. In all other respects, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISCUSSION

I. *Substitution of Trial Judges*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Instructional Error*

    A. *CALJIC Nos. 8.71 and 8.72*

Defendant challenges CALJIC Nos. 8.71 and 8.72, arguing these instructions violate his due process rights by allowing a jury to make a determination of guilt on an element of the crime where one or more jurors may have

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

\*See footnote, *ante*, page 252.

had reasonable doubt. Defendant contends the instructions force individual jurors who had a reasonable doubt as to the degree of murder (CALJIC No. 8.71), or as to whether the crime was murder or manslaughter (CALJIC No. 8.72), to conclude they may not give the defendant the benefit of the doubt in reaching their own individual determinations as to the degree of the offense. The juror may only do so, defendant contends, if the jury collectively and unanimously agrees upon the existence of reasonable doubt. According to defendant, "If but one juror finds first degree murder beyond a reasonable doubt, then there is no unanimity, and by the terms of the instruction, the others are precluded from giving defendant the benefit of the doubt in reaching their determinations."

CALJIC No. 8.71, as given, states: "If you are convinced beyond a reasonable doubt and unanimously agree that the crime of murder has been committed by a defendant, but you unanimously agree that you have a reasonable doubt whether the murder was of the first or of the second degree, you must give defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree."

CALJIC No. 8.72, as given, states: "If you are convinced beyond a reasonable doubt and unanimously agree that the killing was unlawful, but you unanimously agree that you have a reasonable doubt whether the crime is murder or manslaughter, you must give the defendant the benefit of that doubt and find it to be manslaughter rather than murder."

CALJIC No. 8.71 explains the process jurors must go through to determine the degree of murder. Under CALJIC No. 8.71, if the jury unanimously has a reasonable doubt as to whether the murder is of the first or second degree, they must return a verdict of second degree murder. CALJIC No. 8.72 states if the jury finds an unlawful killing but there is doubt whether it is murder or manslaughter, they must give defendant the benefit of the doubt and find the killing manslaughter.

As defendant correctly summarizes, CALJIC No. 8.71 requires the jury to find second degree murder if they are convinced beyond a reasonable doubt and unanimously agree that defendant committed a murder, but unanimously agree they have a reasonable doubt as to the degree. However, defendant asserts CALJIC No. 8.71 eliminates the presumption that murder is of the second degree by stating that a defendant is entitled to the benefit of the doubt as to degree only if the jury unanimously agrees there is reasonable doubt in the first place. "In other words, before jurors may give the defendant the benefit of the doubt, they must first unanimously agree that there is a reasonable doubt."

Defendant's argument flies in the face of CALJIC Nos. 17.11 and 17.40, also given by the court. CALJIC No. 17.11, as given, states: "If you find the defendant guilty of the crime of murder, but have a reasonable doubt as to whether it is of the first or second degree, you must find him guilty of that crime in the second degree." CALJIC No. 17.40 provides: "The People and the defendant are entitled to the individual opinion of each juror. [¶] Each of you must consider the evidence for the purpose of reaching a verdict if you can do so. Each of you must decide the case for yourself, but should do so only after discussing the evidence and instructions with the other jurors. [¶] Do not hesitate to change an opinion if you are convinced it is wrong. However, do not decide any question in a particular way because a majority of the jurors, or any of them, favor that decision. [¶] Do not decide any issue in this case by the flip of a coin, or by any other chance determination." In addition, the court instructed the jury to "[c]onsider the instructions as a whole and each in light of all the others."

We determine the correctness of jury instructions from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction. (*People v. Burgener* (1986) 41 Cal.3d 505, 538 [224 Cal.Rptr. 112, 714 P.2d 1251].) We also presume that the jury is capable of following the instructions as given. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1337 [65 Cal.Rptr.2d 145, 939 P.2d 259].)

We find the court properly instructed the jury. We note the Supreme Court has consistently upheld the validity of CALJIC Nos. 8.71 and 8.72. (*People v. Dennis* (1998) 17 Cal.4th 468, 536–537 [71 Cal.Rptr.2d 680, 950 P.2d 1035]; *People v. Morse* (1964) 60 Cal.2d 631, 656–657 [36 Cal.Rptr. 201, 388 P.2d 33].) In light of the instructions as a whole, the jury did not misinterpret CALJIC No. 8.71 as requiring them to make a unanimous finding that they had reasonable doubt as to whether the murder was first or second degree.

We find CALJIC No. 8.72 also properly given. CALJIC No. 8.72 requires the jury to find manslaughter if they are convinced beyond a reasonable doubt and unanimously agree the killing was unlawful but have a reasonable doubt as to whether the crime is murder or manslaughter. Defendant asserts, "Construed literally . . . this instruction tells individual jurors that they may not give the defendant the benefit of the doubt in reaching their own individual determinations in deciding between murder and manslaughter, but may do so only if the jury collectively and unanimously agrees upon the existence of reasonable doubt."

However, the court also instructed pursuant to CALJIC No. 8.50: "The distinction between murder and manslaughter is that murder requires malice while manslaughter does not. [¶] When the act causing the death, though

unlawful, is done in the heat of passion or is excited by a sudden quarrel that amounts to adequate provocation, the offense is manslaughter. In that case, even if an intent to kill exists, the law is that malice, which is an essential element of murder, is absent. [¶] To establish that a killing is murder and not manslaughter, *the burden is on the People to prove beyond a reasonable doubt each of the elements of murder* and that the act which caused the death was not done in the heat of passion or upon a sudden quarrel." (Italics added.)

■ CALJIC No. 8.72, when considered in context with CALJIC Nos. 8.50, 17.11, and 17.40, did not instruct the jury that it had to make a unanimous finding that they had a reasonable doubt as to whether the crime was murder or manslaughter in order for defendant to receive the benefit of the doubt. We find the court correctly instructed the jury pursuant to CALJIC Nos. 8.71 and 8.72.

### B. *CALJIC No. 2.50.02*

Defendant challenges the constitutionality of CALJIC No. 2.50.02 (2000 rev.), arguing the instruction creates an unconstitutional permissive inference. Defendant contends the instruction improperly permitted the jury to rely on prior acts of domestic violence to infer that he had a propensity to commit premeditated murder and did, in fact, commit premeditated murder.

The 2000 revision of CALJIC No. 2.50.02, as given, states: "Evidence has been introduced for the purpose of showing that the defendant engaged in an offense involving domestic violence on one or more occasions other than that charged in the case. [¶] . . . [¶] If you find that the defendant committed a prior offense involving domestic violence, you may, but are not required to, infer that the defendant had a disposition to commit other offenses involving domestic violence. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused. [¶] However, if you find by a preponderance of the evidence that the defendant committed a prior crime or crimes involving domestic violence, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged offense. The weight and significance, if any, are for you to decide. [¶] You must not consider this evidence for any other purpose."

In *People v. Brown* (2000) 77 Cal.App.4th 1324, 1334–1337 [92 Cal.Rptr.2d 433] (*Brown*), the court rejected an argument that this instructional language permits conviction by a standard of proof less than a reasonable doubt. However, defendant's initial contentions in this case are different. Thus, defendant contends the instruction was unconstitutional because the inferred facts, a disposition to commit crimes of domestic violence

and likelihood that he did commit the charged offense, do not flow "more likely than not" from the proved fact, the prior incidents of domestic violence.

"The due process clauses of the federal Constitution (U.S. Const., 5th & 14th Amends.) require a relationship between the permissively inferred fact and the proven fact on which it depends." (*People v. Mendoza* (2000) 24 Cal.4th 130, 180 [99 Cal.Rptr.2d 485, 6 P.3d 150].) Courts describe the standard for evaluating the relationship between the inferred fact and the proven fact as a " 'rational connection,' " " 'more likely than not,' " and " 'reasonable doubt.' " (*Ibid.*) However, these seemingly disparate statements of the due process standard differ in language, not substance. (*Ibid.*)

The United States Supreme Court found a due process violation when it cannot be said " 'with substantial assurance' " that the inferred fact is " 'more likely than not to flow from the proved fact on which it is made to depend.' " (*Ulster County Court v. Allen* (1979) 442 U.S. 140, 166, fn. 28 [60 L.Ed.2d 777, 797, 99 S.Ct. 2213] (*Ulster County Court*).) The Supreme Court has also held: "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." (*Francis v. Franklin* (1985) 471 U.S. 307, 314–315 [85 L.Ed.2d 344, 353–354, 105 S.Ct. 1965].)

Defendant presents a tripartite objection to CALJIC No. 2.50.02, arguing the instruction consists of a chain of three irrational inferences. "The first inference permits the jury to use the evidence of a prior act of domestic violence or abuse (not necessarily criminal) to infer that the defendant has a criminal disposition to commit crimes of domestic violence in general. From there, the jury is permitted to draw a second inference, that the defendant is likely to commit the crime of which he is accused. The third irrational inference permits the jury to infer that he actually *did commit* that crime."

Defendant contends the first inference is irrational because it allows the jury to infer criminal propensities based on acts that are not necessarily criminal and that may even be legally justifiable. As the People point out, this argument overlooks the language of CALJIC No. 2.50.02, which states that "[i]f you find that the defendant committed *a prior offense involving domestic violence*, you may, but are not required to, infer that the defendant had a disposition to commit other *offenses involving domestic violence*." (Italics added.)

The instruction permits the jury to infer a propensity to commit domestic violence from prior domestic violence incidents, regardless of whether defendant was charged or convicted of the prior abuse. We disagree with

defendant's assertion that the inference offends the due process clauses because it cannot be said "with substantial assurance" that the inferred fact is "more likely than not to flow from the proved fact on which it is made to depend."

Here, witnesses testified to several incidents of domestic violence perpetrated by defendant against Norma. Witnesses described defendant's pushing and slapping Norma, telling her it was time to die while speeding down a freeway, telling her he would kill her, causing bruises and abrasions, and threatening to kill her if she left him. We find "with substantial assurance" that defendant's propensity to commit crimes of domestic violence is "more likely than not to flow" from the proved prior acts of domestic violence.

Next, defendant argues the second inference (if you find defendant had a disposition to commit other offenses you may infer he was likely to commit the charged crime) is irrational because domestic violence often involves automatic thinking rather than the premeditated murder the jury convicted him of. Defendant cites testimony by Richard Ferry, the prosecution's domestic violence expert, who testified domestic abusers often lack self-control.

Defendant conveniently overlooks other testimony by Ferry that a domestic violence batterer can premeditate and deliberate the murder of a spouse. Moreover, as defined by CALJIC No. 2.50.02, domestic violence includes abuse against a spouse, including intentionally or recklessly causing great bodily injury. Defendant's firing of nails into Norma's head constitutes domestic violence. Again, we find with substantial assurance that the inferred fact, defendant's murder of Norma, more likely than not flowed from the proved incidents of prior domestic violence.

Finally, defendant labels the third inference (if you find defendant had a disposition to commit other offenses you may infer he actually did commit the offense charged) irrational because there is no logical link between the two. We disagree.

Defendant murdered Norma with a nail gun. He threatened to kill Norma on several previous occasions in a variety of situations. The conclusion that defendant actually murdered Norma with a nail gun is a logical inference derived from his numerous threats to kill her. We find CALJIC No. 2.50.02, in the present case, was neither illogical nor a violation of defendant's due process rights. We can say " 'with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.' " (*Ulster County Court, supra,* 442 U.S. at p. 166, fn. 28.)

Defendant also asserts CALJIC No. 2.50.02 unconstitutionally undermines the presumption of innocence and the requirement of proof beyond a reasonable doubt. According to defendant, the instruction allows the jury to infer he committed the crime based solely on prior acts of domestic violence, negating the presumption of innocence.

Preliminarily, we note the California Supreme Court approved a similar instruction, which addresses admission of evidence of a defendant's prior uncharged sexual offenses, in *People v. Reliford* (2003) 29 Cal.4th 1007 [130 Cal.Rptr.2d 254, 62 P.3d 601] (*Reliford*). For the purposes of evaluating the constitutional validity of the instructions, there is no material difference between CALJIC No. 2.50.01 and CALJIC No. 2.50.02. (*People v. Escobar* (2000) 82 Cal.App.4th 1085, 1097, fn. 7 [98 Cal.Rptr.2d 696].)

In *Reliford*, the defendant criticized the instruction for failing to inform jurors that the inference they might draw from prior sexual offenses was simply one item to consider along with all other evidence in determining beyond a reasonable doubt that the defendant had been proved guilty beyond a reasonable doubt of the charged crime. (*Reliford, supra,* 29 Cal.4th at p. 1015.) The court rejected the challenge, finding: "By telling jurors that evidence of prior offenses is insufficient to prove defendant's guilt of the charged offenses beyond a reasonable doubt, jurors necessarily understand that they must consider all the other evidence before convicting defendant." (*Ibid.*)

CALJIC No. 2.50.02 contains a similar admonition that defendant's commission of prior crimes "is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged offense." In addition, the court instructed the jury with CALJIC No. 2.90, regarding the presumption of innocence and the burden of proof, and CALJIC No. 1.01, instructing the jury to view the instructions as a whole. We presume the jury followed the court's instructions. (*People v. Holt* (1997) 15 Cal.4th 619, 662 [63 Cal.Rptr.2d 782, 937 P.2d 213].)

Finally, defendant asserts CALJIC No. 2.50.02 together with CALJIC No. 2.50.2 permits the jury to infer guilt based on prior acts proven by a preponderance of the evidence, undermining the beyond a reasonable doubt standard to be applied to the charged offense.[3]

---

[3] CALJIC No. 2.50.2 states: " 'Preponderance of the evidence' means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it. [¶] You should consider all of the evidence bearing upon every issue regardless of who produced it."

As we have mentioned, this contention was rejected in *Brown, supra,* 77 Cal.App.4th at pages 1335–1337, an opinion with which we agree. Moreover, in *Reliford,* the Supreme Court faced a similar challenge to CALJIC No. 2.50.01. The court turned back the challenge: "We do not find it reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof. Nothing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination whether defendant committed a prior sexual offense . . . . The instructions instead explained that, in all other respects, the People had the burden of proving defendant guilty 'beyond a reasonable doubt.' [Citations.] Any other reading would have rendered the reference to reasonable doubt a nullity." (*Reliford, supra,* 29 Cal.4th at p. 1016.)

Here, the court also instructed the jury the prosecution bore the burden of proving defendant guilty beyond a reasonable doubt. (CALJIC No. 2.90.) We find no error in the court's instructions.

C.–E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

We remand for a correction of the abstract of judgment in accordance with this opinion. In all other respects, the judgment is affirmed.

Blease, Acting P. J., and Sims, J., concurred.

A petition for a rehearing was denied July 1, 2004, and appellant's petition for review by the Supreme Court was denied September 22, 2004. George, C. J., did not participate therein.

---

*See footnote, *ante,* page 252.