Filed 6/18/15  P. v. Cortez  CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065535 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD240888) |
| RONNIE OZUNA CORTEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Leo Valentine, Jr., Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Ronnie Ozuna Cortez of two counts of assault by means of force likely to produce great bodily injury and one count each of battery, corporal

injury to a spouse, making a criminal threat and attempting to dissuade a witness from reporting a crime. The trial court granted probation and ordered Cortez to serve 180 days in custody. Cortez appeals, contending the trial court erred by (1) failing to sua sponte instruct the jury with the lesser included offense of simple assault as to the aggravated assault charges, (2) failing to sua sponte instruct on unanimity as to the charge of dissuading a witness from reporting a crime, and (3) instructing the jury on uncharged propensity evidence with CALCRIM No. 852. We reject his arguments and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Cortez was married to Irma Cortez and lived with her and her three children, Angie age 25, Valeria age 19 and Esteban age 15. Irma operated a beauty shop until Cortez gave the shop to Irma's sister. The first felony assault charge stemmed from an incident that occurred in March 2012. One evening while Irma was exchanging text messages with a client that wanted a haircut, Cortez accused Irma of exchanging text messages with a lover. When Irma gave Cortez her phone, he texted the client telling her to "fuck off because she ha[s] a husband."

Later that night, Cortez returned from the liquor store. He appeared intoxicated and had an angry look on his face, which caused Irma to lock herself in her bedroom. At some point, Cortez knocked on the bedroom door and told Irma to open it. When she opened the door, Cortez pushed his way in, grabbed Irma by the neck with one hand, shoved her against a wall and accused her of betraying him. Cortez had his hand around Irma's neck for "minutes." She had difficulty breathing and believed he would

2

kill her. Cortez let go of Irma's neck when Valeria and Esteban came to the door. Her children took photographs of Irma's neck, which was red for the following day or two, and hurt for three or four days. Irma's son testified that the redness on Irma's neck looked "[l]ike some hands."

The remaining convictions stem from an incident that occurred the following month. One morning while Cortez drove Irma to her beauty school, he accused her of having a lover at the school, yelled obscenities and threatened to kill her. He also threatened to kill one of Irma's children because that would "hurt" her. When Irma telephoned one of her daughters, Cortez stopped the car, walked to the passenger side, grabbed Irma's arm and took the phone from her. He disassembled the phone and removed the battery. When Cortez resumed driving, Irma began crying and asking for her phone. Cortez struck her head near her ear between three and four times with the heel of his palm and then threw the phone parts at her, which she collected to reassemble the phone.

Irma called 911 and asked if someone spoke Spanish. Cortez struck Irma again until she lost consciousness. When she regained consciousness, her head hurt and parts of her body were numb. Cortez dropped Irma off at her beauty school and someone at the school called the police. The police arrived and took photographs of the scratches and marks on Irma's face. Based on Irma's demeanor, an officer obtained an emergency protective order because she considered the domestic violence incident to have been more serious than the average domestic violence incident.

3

DISCUSSION

I. *Lesser Included Offense*

The jury convicted Cortez on two counts of assault by means of force likely to cause great bodily injury related to each of the two incidents.  Cortez argues the trial court erred in failing to sua sponte instruct the jury on the lesser included offense of simple assault.  We disagree as substantial evidence did not support such an instruction.

A trial court has a sua sponte duty to instruct on lesser included offenses whenever substantial evidence raises a question whether all the elements of the charged offense are present.  (*People v. Smith* (2013) 57 Cal.4th 232, 239.) "Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive."  (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.)  The existence of any evidence, no matter how weak, will not justify instructions on a lesser included offense.  (*People v. Whalen* (2013) 56 Cal.4th 1, 68.)  In deciding whether there is substantial evidence, we do not evaluate the credibility of the witnesses, a task for the jury.  (*People v. Manriquez* (2005) 37 Cal.4th 547, 585.)  We independently review the question of whether the trial court erred by failing to instruct on a lesser included offense.  (*People v. Booker* (2011) 51 Cal.4th 141, 181.)

Misdemeanor assault under Penal Code section 240 is a lesser included offense of assault with force likely to produce great bodily injury under Penal Code section 245, subdivision (a)(4).  (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747-748.)

4

"Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate.  [Citations.]  '"The crime . . ., like other assaults, may be committed without infliction of any physical injury, and even though no blow is actually struck.  [Citation.]  The issue, therefore, is not whether serious injury was caused, but whether the force used was such as would be likely to cause it."'  [Citation.]  The focus is on the force actually exerted by the defendant, not the amount of force that could have been used.  [Citation.]  The force likely to produce bodily injury can be found where the attack is made by use of hands or fists.  [Citation.]  Whether a fist used in striking a person would be likely to cause great bodily injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied."  (*Id.* at pp. 748-749.)  The force has to be "likely" to produce a great bodily injury; it is immaterial whether the victim in fact suffers any harm.  (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.)

The question presented is whether there is substantial evidence from which a reasonable jury could find Cortez committed only simple assaults and not assaults by means of force likely to produce great bodily injury.  If the trial record contains no such evidence, the court had no duty to sua sponte instruct the jury on the elements of simple assault as a lesser included offense of aggravated assault.  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008.)

During the first incident, Cortez grabbed Irma by the neck and shoved her against a wall.  Cortez had his hand around Irma's neck for "minutes" causing her to have difficulty breathing.  She stated that eventually she "couldn't breathe that much

5

anymore and . . . couldn't talk." Irma's son stated that the redness on Irma's neck looked "[l]ike some hands." The redness lasted a day or two, and Irma experienced soreness for three or four days. Given the nature of this attack, no reasonable juror could find that the force Cortez used was less than force likely to produce great bodily injury. (*People v. Covino* (1980) 100 Cal.App.3d 660, 667-668 [rejecting argument that, as a matter of law, an assault which produces only momentary interruption of breathing and slight reddening of the skin without any substantial damage to the victim's bodily tissue is not an assault by means of force likely to produce great bodily injury].)

Cortez argues the jury's not guilty finding on the charge of infliction of corporal injury and its guilty finding on the alternate charge of battery suggests the jury viewed Irma's injuries from the first incident as relatively minor. We agree these findings suggest the jury viewed Irma's injuries from the first incident as being minor, but fail to see how this advances Cortez's argument as the victim need not suffer any harm; rather, the force has to be "likely" to produce a great bodily injury. (*People v. Aguilar*, *supra*, 16 Cal.4th at p. 1028.) A physician testified that strangulation could lead to death. Thus, holding a person by the neck against a wall until the person has difficulty breathing is likely to produce great bodily injury.

During the second incident, Cortez struck Irma's head near her ear a number of times with the heel of his palm. He later struck her again until she lost consciousness. When she regained consciousness, her head hurt and parts of her body were numb. Irma's classmate, Marisela Cardenas, saw Irma immediately after the second incident

6

and testified that Irma had mentioned being unconscious. A physician testified that a blow to the head resulting in unconsciousness is a serious situation. Thus, repeatedly striking a person in the head until the person loses consciousness is likely to cause serious injuries. We reject Cortez's argument that the jury's not true finding on the great bodily injury allegation attached to the count suggests the assault was not likely to cause great bodily injury. Again, the issue is whether the assault was likely to cause great bodily injury, not whether the assault in fact caused such injury.

In summary, we conclude the trial court was not obligated to instruct on the lesser included offense of simple assault for either the first or the second incident.

## II. *Unanimity Instruction*

During the second incident, Cortez interrupted Irma's telephone calls to her daughter and to 911. Cortez contends that during closing argument, the prosecutor argued both telephone calls could establish Cortez's guilt on the charge of attempting to dissuade a witness from reporting a crime. Thus, he asserts the trial court should have instructed the jury that it had to unanimously agree which act Cortez committed to be guilty of dissuading Irma from reporting the alleged assault. We reject this argument.

A defendant's constitutional right to a unanimous jury verdict requires that when the evidence shows more than one unlawful act which could support a single charged offense, the prosecution must either elect which act to rely upon or the trial court must sua sponte give a unanimity instruction telling the jurors they must unanimously agree which act constituted the crime. (*People v. Melhado* (1998) 60

7

Cal.App.4th 1529, 1534.) The unanimity instruction is designed to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agreed the defendant committed. (*Ibid.*) However, if under the evidence presented there is no reasonable possibility the jurors would disagree which offense supported the charge, a unanimity instruction is not required. (*People v. Burns* (1987) 196 Cal.App.3d 1440, 1458; *People v. Brown* (1991) 234 Cal.App.3d 918, 935-936.) This latter principle applies here.

The trial court instructed the jury that to find Cortez guilty of attempting to dissuade a witness from reporting a crime, the People must prove he tried to prevent Irma from making a report that she was a victim of a crime to 911. Thus, as Cortez concedes, his act of preventing Irma from completing the telephone call to her daughter could not have been a basis to find him guilty. Although Cortez contends the prosecutor referred to both calls to argue Cortez's guilt of dissuading a witness from reporting a crime, the record does not support this contention.

During closing argument, the prosecutor mentioned that Irma retrieved her phone after her attempted call to her daughter and then made a call to 911 where she asked to talk to a Spanish speaker. The prosecutor argued that the transcript of the 911 call supported an inference that Irma was the victim of a crime and she was attempting to report the crime when Cortez grabbed her arm and began hitting her. Viewed in context, the prosecutor did not urge the jury to find Cortez guilty of dissuading a witness based on Irma's telephone call to her daughter. Accordingly, a unanimity

8

instruction was not required because under the evidence presented, there was no reasonable possibility the jurors would disagree which act supported the charge.

Moreover, even if the jury could have misinterpreted the prosecutor's argument, the trial court instructed the jury that the remarks and arguments of counsel were not evidence and that to convict Cortez of the crime, the People needed to prove Cortez tried to prevent Irma from reporting the crime to 911. We presume the jury understood and followed the court's instructions. (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

### III.  *Uncharged Propensity Evidence*

At trial, Irma testified to an ongoing pattern of domestic violence, which preceded the two incidents at issue. Cortez contends Evidence Code section 1109 (the code section under which this evidence was admitted) and CALCRIM No. 852 (the related jury instruction) violated his federal constitutional rights. Cortez concedes defense counsel did not object to the instruction below, but asserts we may address the issue under Penal Code section 1259. He also concedes the issue whether a propensity instruction is error has been resolved under California law, but argues the issue to preserve his right to raise it in future judicial proceedings, including federal habeas corpus.

As Cortez acknowledges, similar attacks on CALCRIM No. 852 have been rejected by numerous courts, which have held that the instruction correctly states the law on the limited purpose for which the jury may consider prior acts of domestic violence under Evidence Code section 1109. (*People v. Reliford* (2003) 29 Cal.4th

1007, 1009, 1012-1016; *People v. Reyes* (2008) 160 Cal.App.4th 246, 251-253; *People v. Pescador* (2004) 119 Cal.App.4th 252, 261-262; *People v. Brown* (2000) 77 Cal.App.4th 1324, 1335-1337.)  We agree with the reasoning in these cases and reject Cortez's arguments.

DISPOSITION

The judgment is affirmed.


MCINTYRE, J.

WE CONCUR:

MCCONNELL, P. J.

BENKE, J.