Filed 10/27/15  P. v. Yarbrough CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B259513 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.  PA073596) |
| v. | |
| EDWARD YARBROUGH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel B. Feldstern, Judge.  Affirmed.

Rachel Lederman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback and Jaime L. Fuster, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Edward Yarbrough challenges the constitutionality of Evidence Code section 1109, which permits introduction of evidence of uncharged acts of domestic violence to support a current charge of domestic violence, contending the introduction of such evidence violated his right to due process under the state and federal constitutions.[1] He further challenges CALCRIM No. 852, which informs the jury that the evidence of uncharged acts may be used to support an inference that the defendant was disposed or inclined to commit the current offenses. We conclude, in line with the many courts that have considered the same or similar challenges, that section 1109 is constitutional and that CALCRIM No. 852 properly instructs the jury on the controlling principles that must guide it in its consideration of evidence introduced under the provision. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Information*

On May 8, 2014, appellant was charged by information with inflicting corporal injury on a cohabitant on April 25, 2012 (count one, Pen. Code § 273.5, subd. (a)); assault by means likely to produce great bodily injury that same date (count two, Pen. Code, § 245, subd. (a)(4)); attempting in May and June 2012 to dissuade a witness from testifying (count three, Pen. Code, § 136.1, subd. (a)(2)); failure to appear while on bail in August 2013 (count four, Pen. Code, § 1320.5); injuring a cohabitant on February 11, 2014, after a prior conviction (count five, Pen. Code, § 273.5, subd. (f)(1)); and inflicting corporal injury on a cohabitant on October 10, 2013 (count six, Pen. Code, § 273.5, subd. (a)). The victim named in counts one through three was Susan M. The victim named in counts five and six was Patricia G.

---

[1]     Undesignated statutory references are to the Evidence Code.

B. *Evidence at Trial*

1. *Susan M.*

Appellant was charged with assaulting and inflicting corporal injury on Susan M. on April 25, 2012, and attempting to dissuade her from testifying a few months later. Susan testified that in early 2011, she met appellant through a dating Web site. He moved into her home within a couple of months. On the morning of September 19, 2011, she asked him to leave, calling the sheriff's department for assistance when he refused to go. Appellant broke Susan's cell phone, threw her on a bed, grabbed her wrists above her head, and told her he was going to kill her. Appellant eventually let her go, packed his things, asked Susan to take him to the bus stop and then took her keys so he could drive. As they were approaching the garage, Susan tried to get away. Appellant grabbed her, ripped her shirt, slammed her to the ground and dragged her to the kitchen hallway, where they struggled and she pleaded for her life. During the struggle, appellant pulled a chunk of hair from her head. When appellant calmed down, Susan drove him to a bus station. Susan did not immediately report the incident, first going to a stylist to attempt to fix her hair and later going to pick up her sons from school. She called authorities later that evening, after the boys had gone to sleep. A deputy came and took a report.

Susan and appellant got back together six or seven weeks after the September 2011 incident, and in February 2012, they both moved into a new apartment. In March 2012, after accusing her of "messing with other guys," appellant kicked her and took her phone away.[2]

---

[2] Neither the September 2011 nor the March 2012 incidents was charged in the information. As discussed in greater detail below, the evidence was admitted under section 1109 as other acts of domestic violence relevant to the charged incidents in April 2012 and thereafter.

On April 24, 2012, appellant became angry after finding old photographs of Susan with other men. He hit her multiple times, including once in the right eye, causing profuse bleeding and extensive damage to her eye socket, and fracturing her nose.[3] Susan went to an emergency room for treatment and called law enforcement officers to report the incident. The next day, appellant turned up at Susan's home and demanded to be let in. She called 911 and he left. Shortly thereafter, she allowed him to move back in, planning to persuade him to stay in her home until she could call authorities and have him arrested. She contacted authorities and appellant was arrested on May 21, 2012.

Appellant called Susan multiple times from jail. After she testified at the preliminary hearing, appellant attempted to persuade her not to appear at trial.[4]


2. *Patricia G.*

Appellant was charged with inflicting injury on Patricia G. on October 10, 2013 and February 11, 2014. Patricia testified that in August 2013, she met appellant through a dating Web site. Within a short period, he moved into her home. He told Patricia he had hit other women in the past, and had been in jail for domestic violence. On October 9, 2013, appellant accused Patricia of having an

---

[3]    Susan eventually had extensive surgery to save her eye, but it remained damaged two years after the incident.

[4]    The preliminary hearing for the April 25, 2012 assault took place in June 2012, and an information charging appellant with assaulting Susan was filed that same month. In November 2012, appellant was released on bail. On August 13, 2013, appellant failed to appear for trial. The court ordered bail forfeited and declared a mistrial. Appellant was not located and arrested until April 8, 2014.

affair and pulled her hair.[5]  The next day, she refused his request for money and he punched her in the face.  Patricia called authorities and appellant left for a time.  In January 2014, Patricia allowed him to move back in with her.  On February 11, 2014, he again accused her of infidelities.  He pulled her hair and pushed her down on a bed.  She gave him money and told him to leave.  While she was driving him to a bus stop, he hit her on the right temple.  Appellant reappeared a few days later outside Patricia's home and threatened to slash her tires.  She called authorities, but he left the area before they arrived.

### 3.  *Jeannette W.*

Jeannette W. was permitted to testify concerning additional incidents of domestic violence not charged in the information.  Jeannette met appellant through a chat site and began dating him in 2008.  In February 2009, appellant moved in with her.  On October 14, 2009, after Jeannette questioned him about a telephone conversation he had had with another woman, appellant punched her in the head and eye, and dragged her by the hair from the kitchen to the bedroom, where he continued to punch and kick her.  He pulled the telephone out of the wall and threatened to kill her if she told anyone about the assault.  When Jeannette tried to stop appellant from taking her car and leaving, he punched her again.  In February 2010, appellant was convicted for his assault on Jeannette.

### 4.  *Defense*

Appellant took the stand and denied that Susan told him to move out of her home in September 2011, or that he had engaged in an altercation with her in

---

[5]  Appellant was not charged in the October 9, 2013 hair pulling incident.  The evidence of this incident was admitted under section 1109 as another act of domestic violence to support the charged incidents on October 10, 2013 and February 11, 2014.

which he pulled her hair out. He said that in April 2012, they had looked at some old photographs and laughed about them. He denied having any argument with Susan in connection with the photographs. He claimed that he accidentally hit Susan in the eye in his sleep. He testified that he walked out of the original trial because he heard a prospective juror say she could not judge him fairly. He denied assaulting Patricia in October 2013. He claimed they had had an open relationship and that she was free to see other men. He denied hitting Patricia when she drove him to the train station in February 2013, or ever physically abusing her.

The defense also called Ana Rubalcava, the deputy sheriff who responded to Susan's September 19, 2011 call. Rubalcava saw no evidence of Susan's physical injuries, but was shown chunks of hair, a broken phone and a torn shirt. Detective Juan Carrillo testified that when he followed up on Deputy Rubalcava's report, Susan told him she did not want appellant prosecuted and signed a complaint refusal form. Detective Roland De La Maza testified that when he spoke to Susan on May 18, 2012, she did not mention appellant was again living in her residence.

Audrey Hernandez testified she met appellant on a dating Web site. They had a relationship for approximately six weeks, during which appellant neither threatened nor assaulted her. Appellant told Hernandez he had accidentally punched Susan in the eye in his sleep.

5. *Rebuttal*

In rebuttal, Detective Ryan Elsee, who arrested appellant on May 21, 2012, testified that after being advised of his constitutional rights, appellant stated that he had been involved in a "tussle" with Susan on April 25, 2012, and that she had hit her face on a dresser after falling off the bed.

6

C. *Verdict and Sentence*

The jury found appellant guilty on all counts, and found true the allegation that he had inflicted great bodily injury on Susan M. Appellant admitted having a prior "strike" conviction. The court sentenced appellant to an aggregate prison term of 29 years (19 years on count one, 10 years on count two (stayed), 16 months on count three, 40 months on count four, 32 months on count four, and 32 months on count five). This appeal followed.

## DISCUSSION

A. *Admission of Propensity Evidence Under Section 1109*

1. *Background*

The information stated that pursuant to section 1109, prior incidents of domestic violence "may be used in the prosecution of [the case]." Prior to trial, the prosecutor identified the prior incidents she intended to introduce into evidence: the October 2009 incidents with Jeannette for which appellant suffered a conviction; the September 2011 incident, when appellant allegedly broke Susan's cell phone, threw her on the bed, held her arms, threw her to the ground, dragged her, and pulled out a chunk of her hair; the March 2013 incident, when appellant allegedly kicked Susan; and the February 2014 incident, when appellant allegedly came to Patricia's house and threatened her. Defense counsel objected to the introduction of this evidence, arguing that the circumstances surrounding the prior incidents were not similar to the charged offenses, and that the sole reason for introducing such evidence was to show a general proclivity to engage in domestic violence.

7

The court found the evidence relevant under section 1109 to demonstrate propensity to inflict injury upon a cohabitant or someone in a dating relationship.[6] The court further found that the potential for prejudice did not substantially outweigh the probative value.

Prior to deliberations, the jury was instructed pursuant to CALCRIM No. 852 that it could consider the evidence of prior acts of domestic violence to establish that appellant was "disposed or inclined to commit domestic violence," if it found the People had proven by a preponderance of the evidence that appellant committed the acts. It was further instructed that such evidence was "only one factor to consider along with all the other evidence," that it was "not sufficient by itself to prove that the defendant is guilty of corporal injury to a cohabitant," and that "[t]he People must still prove each charge and allegation beyond a reasonable doubt."

### 2. *Analysis*

Section 1109, subdivision (a)(1) provides that with limited exceptions not applicable here, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 [precluding evidence of character to prove conduct] if the evidence is not inadmissible pursuant to Section 352." Subdivision (b) under section 1109 provides that "[i]n an action in which evidence is to be offered under this section, the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered . . . ."

---

[6]     The court also found the evidence admissible under section 1101, subdivision (b) to show motive and intent.

8

Appellant's primary contention on appeal is that his state and federal due process rights were violated by introduction of evidence of prior acts of domestic violence that were not charged in the information. As appellant acknowledges, overwhelming authority, including Supreme Court precedent, supports the admissibility of such evidence and precludes us from assigning error to its admission.

In *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*), our Supreme Court concluded that admission of evidence of uncharged sexual offenses under the substantially similar provisions of section 1108 did not violate a defendant's due process rights.[7] The court found that even if "the rule against 'propensity' evidence in sex offense cases should be deemed a fundamental historical principle of justice," section 1108 "did not unduly 'offend' those fundamental due process principles." (*Falsetta, supra,* 21 Cal.4th at pp. 914-915, italics deleted.) "By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes," which evidence is "at least circumstantially relevant to the issue of his disposition or propensity to commit these offenses." (*Falsetta, supra,* at p. 915, italics deleted; see *ibid.*, quoting *People v. Alcala* (1984) 36 Cal.3d 604, 631

---

[7] Section 1108, subdivision (a) provides: "(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352. [¶] (b) In an action in which evidence is to be offered under this section, the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered . . . ."

["'Such evidence 'is [deemed] objectionable, not because it has no appreciable probative value, *but because it has too much.*' . . . [Citations.]'"].) The court further explained that the limitation on the scope of evidence admissible under the statute (evidence of prior sex offenses only and only when the defendant is charged with committing another sex offense) meant no undue burden would be imposed on the defense; the requirement of pretrial notice of the intention to introduce such evidence precluded any possibility of surprise or lack of preparedness; and the discretion afforded the trial judge to exclude the proffered evidence eliminated the potential for "protracted 'mini-trials'" to determine the truth or falsity of the prior charge and undue prejudice to the defendant. (21 Cal.4th at pp. 915-916.) The court held that with these checks and balances in place, admission of propensity evidence under section 1108 did not violate state or federal due process. (21 Cal.4th at pp. 918, 922.)

In the immediate wake of *Falsetta*, three Courts of Appeal were called on to address due process challenges to section 1109: *People v. Brown* (2000) 77 Cal.App.4th 1324, *People v. Hoover* (2000) 77 Cal.App.4th 1020, and *People v. Johnson* (2000) 77 Cal.App.4th 410. In *People v. Brown*, Division Two of the First District concluded the reasoning in *Falsetta* was equally applicable to a due process challenge to section 1109, finding sections 1108 and 1109 to be "complementary portions of the same statutory scheme" creating an exception to the usual exclusion of propensity evidence due to "the difficulties of proof unique to the prosecution of [the specified] crimes." (77 Cal.App.4th at p. 1333.) The court observed that both section 1108 and section 1109 require "'pretrial notice of the offenses sought to be proved, assuring that the defendant will not be surprised or unprepared to rebut the proposed evidence.'" (*Id*. at p. 1334, italics deleted, quoting *Falsetta*, *supra*, 21 Cal.4th at p. 916.) In addition, both sections "limit the admissibility of evidence of prior misconduct if its probative value is substantially

10

outweighed by its prejudicial effect. [Citations.]" (77 Cal.App.4th at p. 1334.) Further, "[t]he specific retention of the power to exclude evidence under section 352 found in both [provisions], provides a 'realistic safeguard that ensures that the presumption of innocence and other characteristics of due process are not weakened by an unfair use of evidence of past acts.'" (*Ibid.*, quoting *People v. Harris* (1998) 60 Cal.App.4th 727, 730.) Accordingly, *Falsetta's* reasoning was "fully applicable to section 1109 . . . ." (77 Cal.App.4th at p. 1334.)

The Third District and Division Two of the Fourth District reached the same conclusion in *People v. Johnson*, *supra*, 77 Cal.App.4th at p. 420 ["*Falsetta*, by parity of reasoning, supports upholding the constitutional validity of Evidence Code section 1109 against a due process challenge"] and *People v. Hoover*, *supra*, 77 Cal.App.4th at pp. 1026-1027 ["In determining the constitutionality of section 1109, we adopt the reasoning of the California Supreme Court as put forth in *Falsetta*"], as has every other Court of Appeal to have considered the issue. (See, e.g., *People v. Brown* (2011) 192 Cal.App.4th 1222, 1232-1237; *People v. Cabrera* (2007) 152 Cal.App.4th 695, 703-704; *People v. Price* (2004) 120 Cal.App.4th 224, 239-240; *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095-1096; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1309-1310; *People v. James* (2000) 81 Cal.App.4th 1343, 1353.) In light of this overwhelming authority, we view the constitutionality of section 1109 to be settled.

B. *CALCRIM No. 852*

Appellant also challenges CALCRIM No. 852, contending it is argumentative in that it "'invite[s] the jury to draw inferences favorable to the defendant from specified items of evidence on a disputed question of fact.'" (Quoting *People v. Wright* (1988) 45 Cal.3d 1126, 1135.)

11

Apart from whether appellant's failure to object to the wording of the instruction or request any modification precludes consideration of this issue on appeal (see *People v. Bolin* (1998) 18 Cal.4th 297, 327-328 [where instruction correctly states the law, failure to request clarification or amplification of its terms waives challenge to the instruction on appeal]), these attacks on CALCRIM No. 852 have been uniformly rejected by appellate courts, which have held that the instruction correctly states the law concerning the purpose for which the jury may consider prior acts of domestic violence admitted under section 1109. (*People v. Reyes* (2008) 160 Cal.App.4th 246, 250-253; *People v. Pescador* (2004) 119 Cal.App.4th 252, 261-262; *People v. Johnson* (2008) 164 Cal.App.4th 731, 739; *People v. Brown, supra,* 77 Cal.App.4th at pp. 1335-1337.) In addition, our Supreme Court has approved an instruction similar in all material respects to CALCRIM No. 852, except that it instructs the jury as to the proper inferences and burden of proof where evidence of uncharged sex crimes is admitted under section 1108. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1009, 1012-1016.) Although none of these cases addressed the contention that the instruction was argumentative under the definition in *People v. Wright, supra,* 45 Cal.3d 1126 (quoted above), the Supreme Court addressed an analogous issue in *People v. Kelly* (1992) 1 Cal.4th 495, where the instruction (CALJIC No. 2.03) allowed the jury to infer consciousness of guilt from a defendant's pretrial fabrications: "CALJIC No. 2.03 . . . not merely pinpoint evidence the jury may consider. It tells the jury it may consider the evidence *but it is not sufficient by itself to prove guilt*. [Citation.] Defendant obviously does not quarrel with the emphasized language. If the court tells the jury that certain evidence is not alone sufficient to convict, it must necessarily inform the jury, either expressly or impliedly, that it may at least consider the evidence. Nothing in *Wright* affects such an instruction. There was no error." (*Kelly, supra,* 1 Cal.4th at pp. 531-532.) Here, the instruction similarly

12

highlighted the evidence in order to inform the jurors that it was not sufficient to prove appellant's guilt, but that it could be considered in conjunction with the other evidence to support a guilty verdict. There was no error in giving the instruction.

/ / /

/ / /

/ / /

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.

We concur:


EPSTEIN, P. J.


WILLHITE, J.