Filed 6/11/21  P. v. Cresham CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM MARTIN CRESHAM,<br><br>    Defendant and Appellant. | B303803<br><br>(Los Angeles County<br>Super. Ct. No. MA075346) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Kathleen Blanchard, Judge.  Affirmed.

Eileen Manning-Villar, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

_____

William Cresham beat his girlfriend and threatened to kill her, for which a jury convicted him of assault by means of force likely to produce great bodily injury, criminal threats, and violation of two criminal protective orders. On appeal, he argues the trial court erred by admitting evidence of two prior incidents of domestic violence, instructing the jury with CALJIC No. 2.50.02, and imposing fines and fees without conducting an ability-to-pay hearing. He also argues the criminal threats statute is unconstitutional. We reject his arguments and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Cresham and Lauren S.[1] began dating in 2008. In November 2018, Lauren contacted police and reported that Cresham had severely beat her about two weeks earlier. An officer who interviewed her noticed yellow bruising on the left side of her face.

Lauren told police officers that she and Cresham had an argument while in a car. Cresham took Lauren's keys and phone and told her he would strangle her if she left. Lauren got out of the car and started running towards her parents' house, which was nearby. Cresham chased her and tackled her. He slammed her on the ground, hit her in the back of the head, flipped her over, and mounted her. Cresham then wrapped his hand around Lauren's throat and strangled her to the point that she could not breathe. He punched her in the face with such force that she began to see stars and lost consciousness for a few seconds. Cresham said if Lauren tried something like that again, he would

---

[1] We refer to the victim by her first name and last initial in order to protect her privacy interests. (See Cal. Rules of Court, rule 8.90(b)(4).)

beat her and kill her. Lauren was terrified that Cresham would kill her.

Lauren and Cresham eventually got back in the car. They drove around over the next few days, and Lauren felt like she was being held hostage. Cresham continued to threaten that if Lauren tried to run away, he would catch and beat her. Lauren told Cresham she was in pain and asked to go to a hospital, but he refused.

Cresham was charged with assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4); count 1),[2] criminal threats (§ 422, subd. (a); count 2), and two counts of contempt of court for violating a criminal protective order (§ 166, subd. (c)(1); counts 3 & 4). The information further alleged that Cresham had suffered two prior serious felony convictions (§ 667, subd. (a)(1)) that qualified as strikes (§§ 667, subd. (d), 1170.12, subd. (b)).

At trial, the prosecution presented evidence consistent with the facts summarized above. The prosecution also presented evidence showing Cresham knowingly had contact with Lauren in violation of two criminal protective orders. Further, the prosecution presented evidence of two prior incidents of domestic violence between Cresham and Lauren, which we discuss in more detail below.

Lauren testified at trial and denied that Cresham attacked her. She claimed she fabricated her police report because she was upset that Cresham recently crashed her car.

---

[2] All further undesignated statutory references are to the Penal Code.

Cresham testified in his own defense. He denied assaulting or threatening Lauren. According to Cresham, Lauren lied to police because she was worried her father would be upset if he found out Cresham crashed her car.

The jury found Cresham guilty of the substantive offenses as charged. In a bifurcated trial, the court found true the prior conviction allegations.

The court sentenced Cresham to an aggregate term of 18 years plus 25 years to life, consisting of the following: on count 1, the high term of four years, doubled because of the prior strikes; on count 2, 25 years to life, plus 10 years for the prior serious felony convictions[3]; and on counts 3 and 4, 364 days in jail, to be served concurrent to the other sentences. The court also imposed various fines and fees.

Cresham appealed.

## DISCUSSION

### I. The Court Did Not Err in Admitting Evidence of Prior Incidents of Domestic Violence

Cresham contends the trial court erred in admitting evidence of prior incidents of domestic violence between him and Lauren. We disagree.

#### A. Background

Before trial, Cresham moved to exclude evidence of two uncharged acts of domestic violence he committed against Lauren in 2015 and 2017. The court ruled the evidence was admissible

---

[3] The abstract of judgment mistakenly reflects that the two five-year terms were imposed under section 667.6, subdivision (b). We order the trial court to issue a new abstract that correctly reflects they were imposed pursuant to section 667, subdivision (a).

4

under Evidence Code section 1109 and declined to exclude it under Evidence Code section 352. The court noted the evidence was highly probative given the prior incidents were recent, and there was a risk the victim would recant. The court further determined the evidence was not likely to inflame the passions and prejudices of the jury.

At trial, the prosecutor presented evidence that in November 2015, Lauren and Cresham had an argument, and Lauren went to her parents' home to get away from him. Cresham repeatedly called Lauren and sent her approximately 100 text messages. In some of the messages, Cresham threatened to kill Lauren, make her mother suffer, and force her to watch as he killed her family.

The prosecutor also presented evidence that in July 2017, Cresham became upset after Lauren told him she was hungry. Cresham pulled Lauren's hair, put her in a headlock, and punched her in the face. Lauren began bleeding from her nose. Cresham demanded Lauren drive them to the desert, which she did. He then threatened to kill her. Lauren had bruising around her eyes and on her thighs.

The jury learned that Cresham was convicted of crimes arising out of both incidents.

### B. Relevant Legal Authority

Evidence Code section 1101, subdivision (a), sets forth the general rule that propensity evidence, including evidence of specific instances of prior conduct, is not admissible to prove a defendant's conduct on a specific occasion. (*People v. Jackson* (2016) 1 Cal.5th 269, 299.) Evidence Code section 1109 (section 1109) provides an exception to Evidence Code section 1101's general exclusion of propensity evidence. It permits in "a

5

criminal action in which the defendant is accused of an offense involving domestic violence, [admission of] evidence of the defendant's commission of other domestic violence . . . if the evidence is not inadmissible pursuant to [Evidence Code s]ection 352." (§ 1109, subd. (a)(1).)

"[T]he obvious intention of the Legislature [in enacting section 1109] was to provide a mechanism for allowing evidence of . . . acts of domestic violence to be used by a jury to prove that the defendant committed the charged offense of the same type; recidivist conduct the Legislature has determined is probative because of its repetitive nature. Furthermore, it is apparent that the Legislature considered the difficulties of proof unique to the prosecution of these crimes when compared with other crimes where propensity evidence may be probative but has been historically prohibited." (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1333–1334 (*Brown*).)

### C. Analysis

#### 1. Section 1109 Does Not Violate Due Process

Cresham first contends the admission of propensity evidence under section 1109 violated his constitutional rights to due process and a fair trial. According to Cresham, the constitution categorically forbids the admission of propensity evidence. We disagree.

In *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*), the California Supreme Court rejected a nearly identical challenge to Evidence Code section 1108, which mirrors section 1109, except it permits the admission of evidence of uncharged sexual misconduct when the defendant is accused of a sexual offense. The high court reasoned that " '[b]y subjecting evidence of uncharged sexual misconduct to the weighing process of section

6

352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury.  (. . . § 352.)  This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence.  [Citation.]  *With this check upon the admission of evidence of uncharged sex offenses in prosecutions for sex crimes, we find that . . . section 1108 does not violate the due process clause.'* ” (*Falsetta, supra*, 21 Cal.4th at pp. 917–918.)  Courts of Appeal have uniformly held the reasoning is *Falsetta* is equally applicable to section 1109, and defeats similar due process challenges to that statute.  (See *People v. Johnson* (2010) 185 Cal.App.4th 520, 529 (*Johnson*) [listing cases].)

Cresham does not dispute that the reasoning in *Falsetta* defeats his due process argument.  Instead, he insists *Falsetta* was wrongly decided.  We are bound by the California Supreme Court's decision (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456), and we agree with the numerous Courts of Appeal that have applied *Falsetta* in the context of challenges to section 1109.  Accordingly, we reject Cresham's contention that section 1109 violated his rights to due process and a fair trial.

**2.  Section 1109 Does Not Violate Equal Protection**

Cresham next contends section 1109 violates the equal protection clause because it impermissibly treats defendants charged with domestic violence offenses differently from otherwise similarly situated defendants.  We disagree.[4]

---

[4]    We reject the Attorney General's argument that Cresham forfeited this issue by failing to raise it in the trial court.  (See

As Cresham recognizes, courts have repeatedly rejected equal protection challenges to section 1109. (See *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1310–1313 (*Jennings*); *People v. Price* (2004) 120 Cal.App.4th 224, 240; *People v. Brown* (2011) 192 Cal.App.4th 1222, 1233, fn. 14.) In *Jennings*, for example, the court found there is a rational basis for permitting propensity evidence in domestic violence cases, but not in others. Specifically, "domestic violence is quintessentially a secretive offense, shrouded in private shame, embarrassment and ambivalence on the part of the victim, as well as intimacy with and intimidation by the perpetrator. . . . Although all criminal trials are credibility contests to some extent, this is unusually— even inevitably—so in domestic . . . abuse cases, specifically with respect to the issue of victim credibility. The Legislature could rationally distinguish between [this kind of case] and all other criminal offenses in permitting the admissibility of previous like offenses in order to assist in more realistically adjudging the unavoidable credibility contest between accuser and accused." (*Jennings, supra*, at p. 1313.)

Cresham contends the *Jennings* court erred by applying rational basis review, rather than strict scrutiny. His argument, however, presupposes that section 1109 violates due process, a contention we have already rejected. We agree with the reasoning in *Jennings* and reject Cresham's equal protection argument on the same grounds.

---

*People v. Yeoman* (2003) 31 Cal.4th 93, 118 [it is a well-established principle that a reviewing court may consider for the first time a claim raising a pure question of law on undisputed facts]; *People v. Delacy* (2011) 192 Cal.App.4th 1481, 1493 [defendant did not forfeit an equal protection challenge to a statute by failing to raise it in the trial court].)

8

### 3. The Trial Court Did Not Abuse its Discretion

Finally, Cresham contends the trial court abused its discretion by refusing to exclude the prior domestic violence evidence under Evidence Code section 352. Once again, we disagree.

Although generally admissible under section 1109, evidence of an uncharged act of domestic violence remains subject to exclusion under section 352. (§ 1109, subd. (a).) Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

When deciding whether to admit evidence of an uncharged act of domestic violence, trial courts "must engage in a careful weighing process. . . . [and] consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other [] offense, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]" (*Falsetta, supra*, 21 Cal.4th at pp. 916–917.) " ' "The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense." ' [Citation.]" (*People v. Johnson, supra,* 185 Cal.App.4th at p. 531.)

We review a trial court's admission of evidence of an uncharged act of domestic violence for an abuse of discretion. (*Johnson, supra,* 185 Cal.App.4th at p. 531.) "A court abuses its discretion when its rulings fall 'outside the bounds of reason.' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 408.) We will uphold the court's decision "unless it exercised its discretion in an arbitrary, capricious, or patently absurd manner. [Citations.]" (*People v. Thomas* (2012) 53 Cal.4th 771, 806.)

Here, there are substantial similarities between the two prior acts of domestic violence and the present offenses. All three incidents involved the same victim (Lauren) and occurred in close temporal proximity (roughly three years apart). In both the 2015 incident and the incident giving rise to the present charges, Cresham became enraged and threatened to kill Lauren after she left him. In the 2017 incident, like the present incident, Cresham became upset with Lauren, physically struck her with enough force to cause bruising, threatened to kill her, and took her to an area where she could not obtain help.

Moreover, like many domestic violence cases, there were no witnesses to the current crimes other than Cresham and the victim. As a result, the trial was essentially a credibility contest between the two, a situation in which propensity evidence is particularly probative. (See *Jennings, supra*, 81 Cal.App.4th at p. 1313; *Brown, supra*, 77 Cal.App.4th at pp. 1333–1334.)

Several other factors also weigh in favor of admission of the evidence. The degree of likelihood that the prior incidents took place is high given Cresham was convicted of offenses arising out of each. The jurors also learned of that fact, which lessened the probability that they would try to punish Cresham for his prior transgressions. (See *People v. Rucker* (2005) 126 Cal.App.4th

10

1107, 1119.) Further, the record shows the prosecutor presented the evidence relatively quickly and in a manner that was not overly confusing, distracting, or misleading for the jury.

Cresham contends the court could have decreased any potential prejudice by permitting the prosecutor to introduce evidence that he suffered the prior convictions, while omitting the specific facts underlying those convictions. Cresham, however, overlooks that the probative value of the evidence arises out of the factual similarities with the present offenses. Simply noting that Cresham suffered prior offenses would not serve the same purpose.

Cresham also argues the evidence was unduly prejudicial because some of the prior acts were significantly more inflammatory than the charged crimes. In particular, he points to evidence that he threatened to make Lauren watch as he killed her family, which displayed an "enhanced level of psychological cruelty."

While we agree the prior domestic violence was reprehensible—particularly Cresham's threat to make Lauren watch as he killed her family—we disagree that it was significantly more inflammatory than the charged offenses. The evidence in this case shows that when Lauren tried to run from Cresham, he chased her down, choked her, and hit her with such force that she saw stars and briefly lost consciousness. Cresham then threatened to kill Lauren if she tried to escape and essentially held her hostage for several days. During that time, he prevented her from receiving medical treatment for the injuries he inflicted on her. Given the terrible nature of all three incidents, we cannot say one was significantly more inflammatory than the others.

11

Considering all the relevant factors, the court's admission of the prior domestic violence evidence was not arbitrary, capricious, patently absurd, or unduly prejudicial. The trial court did not abuse its discretion.

## II. CALJIC No. 2.50.02 is Not Unconstitutional

Cresham contends the trial court erred by instructing the jury with CALJIC No. 2.50.02 because the instruction is unconstitutional.[5] We disagree.

The court instructed the jury with a modified version of CALJIC No. 2.50.02, as follows: "If you find by a preponderance of the evidence that the defendant committed any such uncharged offense involving domestic violence, you may, but are not required to, infer that the defendant had a disposition to commit other offenses involving domestic violence. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crimes of which he is accused. However, even though you find by a preponderance of the evidence that the defendant committed another uncharged crime or crimes involving domestic violence, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the offense that you are determining. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider along with all the other evidence in determining whether the defendant have [*sic*] been proved guilty beyond a

---

[5] We reject the Attorney General's contention that Cresham forfeited this issue by failing to object to the instruction in the trial court. (See *People v. Hudson* (2006) 38 Cal.4th 1002, 1012 [the forfeiture rule does not apply when the trial court gives an instruction that is an incorrect statement of the law].)

reasonable doubt of the charged crimes that you are determining."

Cresham insists this instruction was constitutionally infirm because it permitted the jury to infer guilt and convict him based on a standard of proof less than beyond a reasonable doubt. However, as Cresham recognizes, in *People v. Reliford* (2003) 29 Cal.4th 1007 (*Reliford*), the California Supreme Court rejected these same arguments in the context of a jury instruction pertaining to propensity evidence in sex offense cases (former CALJIC No. 2.50.01). (*Reliford, supra*, at p. 1016.) As Cresham further recognizes, CALJIC Nos. 2.50.01 and 2.50.02 are identical in all material respects, and the reasoning in *Reliford* is equally applicable to CALJIC No. 2.50.02. (See *People v. Pescador* (2004) 119 Cal.App.4th 252, 261–262 [applying *Reliford* to deny challenge to CALJIC No. 2.50.02]; *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1097 [noting cases decided with respect to CALJIC Nos. 2.50.01 and 2.50.02 are generally interchangeable]; see also *People v. Reyes* (2008) 160 Cal.App.4th 246, 253 [applying *Reliford* to deny challenge to CALCRIM No. 852, which is materially the same as CALJIC No. 2.50.02].)

We are bound by the Supreme Court's guidance in *Reliford* (*Auto Equity Sales, Inc. v. Superior Court, supra*, 57 Cal.2d at p. 456), and we agree with our fellow Courts of Appeal that it compels us to conclude that CALJIC No. 2.50.02 is not constitutionally infirm on the grounds Cresham cites. Accordingly, we reject Cresham's arguments.

13

## III. Penal Code Section 422 is Not Unconstitutionally Vague

Chesham contends we must reverse his conviction for violating section 422 because the statute is unconstitutionally vague. We disagree.

Due process of law is violated by "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." (*Connally v. General Construction Co.* (1926) 269 U.S. 385, 391 (*Connally*).) A statute will pass constitutional muster only "if it (1) gives fair notice of the practice to be avoided, and (2) provides reasonably adequate standards to guide enforcement." (*Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 702 (*Fisher*); *Connally, supra*, at p. 391.) Fair notice requires that the statute's terms be described with a reasonable degree of certainty so that an ordinary person can understand what conduct is required of her. (*Fisher, supra*, at p. 702.) Further, the statute must provide sufficient standards of enforcement so there is no threat of arbitrary application. (*Id.* at p. 703.) A statute is presumed to be valid and must be upheld unless its unconstitutionality " ' "clearly, positively and unmistakably appears." ' [Citations.]" (*Patel v. City of Gilroy* (2002) 97 Cal.App.4th 483, 488–489.)

Section 422 makes it an offense to "willfully threaten[] to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person

14

threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety . . . ." (§ 422, subd. (a).)

Cresham argues section 422 is unconstitutionally vague because it is unclear what crimes will result in death or great bodily injury, making it difficult for an individual to know if his threats are unlawful. Further, according to Cresham, the statute gives law enforcement unfettered discretion to determine whether a threatened crime will result in great bodily injury or death.

The court in *People v. Maciel* (2003) 113 Cal.App.4th 679 (*Maciel*), rejected nearly identical arguments to those Cresham advances here. In holding section 422 is not unconstitutionally vague, the court explained that the statute "does not criminalize all threats of crimes that will result in death or great bodily injury, leaving to law enforcement to determine those threats that will result in arrest. Instead, the statute criminalizes only those threats that are 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety.' . . . One who willfully threatens violence against another, intending that the victim take the threat seriously and be fearful, cannot reasonably claim to be unaware that the conduct was prohibited." (*Maciel, supra*, 113 Cal.App.4th at p. 685.)

The court further held the phrase " 'will result in great bodily injury' " is not vague, even when viewed in isolation. The court explained that the phrase "means objectively, i.e., to a

15

reasonable person, likely to result in great bodily injury based on all the surrounding circumstances. [Citations.] . . . . An objective standard of reasonableness provides a sufficiently reliable guide to individuals and law enforcement." (*Maciel, supra,* 113 Cal.App.4th at pp. 685–686.) Moreover, the term " ' "great bodily injury" has been used in the law of California for over a century without further definition and the courts have consistently held that it is not a technical term that requires further elaboration.' [Citation.] The phrase 'great bodily injury' means 'a significant or substantial physical injury.' [Citation.] The phrase 'great bodily injury' is 'sufficiently certain and definite to meet the constitutional requirements' and avoid vagueness." (*Id*. at p. 686.) We agree with the *Maciel* court's analysis of the issue.

Cresham does not seriously challenge the above-quoted reasoning from *Maciel*. Instead, he urges us to follow a decades-old decision by the Nebraska Supreme Court holding a somewhat similar statute to be unconstitutionally vague. (See *State v. Hamilton* (1983) 215 Neb. 694, 695 (*Hamilton*).) The statute at issue in that case made it an offense to threaten to commit "any crime likely to result in death or serious physical injury to another person . . . ." (*Id*. at p. 695.) The Nebraska court held this to be unconstitutionally vague because it lacked a specific intent requirement and used the term "likely," which the court thought was inherently problematic when included in a criminal statute. (*Id*. at pp. 697–699.) Section 422 suffers neither problem: it includes a specific intent requirement and does not use the term "likely."[6] Accordingly, even if we agreed with the holding in *Hamilton*, it would be of no help to Cresham.

_____

[6] Even if the term "likely" were implicit in section 422, as the *Maciel* court suggested, we would not find the statute

16

**IV. Cresham Forfeited His Arguments Regarding Fines and Fees**

Cresham contends the trial court erred by imposing fines and fees without first conducting an ability-to-pay hearing. We find the issue forfeited.

Prior to sentencing, Cresham's public defender filed a request that the court waive all fees and restitution, or alternatively conduct an ability-to-pay hearing. Cresham subsequently retained private counsel.

At the sentencing hearing, the court noted that it received Cresham's request for an ability-to-pay hearing. The court then stated that it intended to impose the minimum fines and fees because it thought Cresham could afford to pay them during his incarceration. The court asked Cresham if he wanted to be heard on the issue, and counsel submitted without argument. The court then imposed a $300 restitution fine (§ 1202.4), a stayed $300 parole revocation fine (§ 1202.45), $160 in court operations assessments (§ 1465.8), and $120 in criminal conviction assessments (Gov. Code, § 70373).

On appeal, Cresham contends the court erred by imposing the fines and fees without conducting an ability-to-pay hearing. The Attorney General insists Cresham forfeited the issue by

_____

unconstitutionally vague. As the *Maciel* court observed, California courts have held statutes with similar language pass constitutional muster. (See, e.g., *People v. Covino* (1980) 100 Cal.App.3d 660, 668 [holding "assault by means of force likely to produce great bodily injury" is not unconstitutionally vague]; *People v. Basuta* (2001) 94 Cal.App.4th 370, 397–398 [holding assault on a child " 'by means of force that to a reasonable person would be likely to produce great bodily injury' " is not unconstitutionally vague].)

17

failing to object at sentencing. For the reasons set out in *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1155 (*Frandsen*), we find the issue forfeited and decline to exercise our discretion to consider it. (See also *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1031–1033 [finding forfeiture where defendant failed to object to fines and fees under §§ 1202.4, 1465.8 & 290.3, and Gov. Code, §§ 70373 & 29550.1, based on inability to pay]; *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464 [citing *Frandsen* to find fines and fees issue forfeited for failure to object in trial court].)

Cresham seems to concede that his counsel did not raise a timely objection to the fines and fees. Nonetheless, he insists the issue was not forfeited because it presents a pure question of law: whether the court violated his constitutional rights by imposing fines and fees without conducting an ability-to-pay hearing. We are not persuaded. Regardless of his framing, Cresham is essentially arguing that the court exercised its otherwise lawful authority in an erroneous manner under the particular facts of his case; such a claim encompasses factual matters and is subject to forfeiture. (*People v. McCullough* (2013) 56 Cal.4th 589, 597; see *People v. Welch* (1993) 5 Cal.4th 228, 236.) Cresham, moreover, "may not 'transform . . . a factual claim into a legal one by asserting the record's deficiency as a legal error.' [Citation.]" (*People v. McCullough, supra*, at p. 597.)

Cresham further argues he may raise the issue for the first time on appeal because it implicates his fundamental constitutional rights. In support, he cites *People v. Vera* (1997) 15 Cal.4th 269 (*Vera*), for the proposition that a "defendant is not precluded from raising for the first time on appeal a claim asserting the deprivation of certain fundamental, constitutional rights." (*Id.* at p. 276.) "[T]he dictum in *Vera* on which defendant

18

relies 'was not intended to provide defendants with an "end run" around the forfeiture rule,' but was limited to a narrow class of constitutional rights," none of which are involved here.  (*People v. Linton* (2013) 56 Cal.4th 1146, 1166, quoting *People v. Tully* (2012) 54 Cal.4th 952, 980, fn. 9.)

Cresham alternatively argues that, to the extent the issue was forfeited, he received ineffective assistance of counsel.  To prevail on a claim of ineffective assistance of counsel a defendant must establish two elements:  (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors or omissions, a determination more favorable to the defendant would have resulted.  (*Strickland v. Washington* (1984) 466 U.S. 668, 690, 694; see *People v. Holt* (1997) 15 Cal.4th 619, 703.)  If the record fails to disclose why trial counsel acted or failed to act in the manner challenged, the ineffective assistance of counsel claim must be rejected unless counsel was asked for, and failed to provide, an explanation or there could be no plausible explanation.  (*People v. Pope* (1979) 23 Cal.3d 412, 426, overruled on another ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)

Here, the record does not disclose why counsel declined to object to the fines and fees, and counsel was not asked to provide an explanation.  Moreover, we can conceive at least one plausible explanation for counsel's failure to object:  he may have been aware that Cresham had the ability to pay the relatively modest fines and fees.  Cresham, after all, had recently retained private counsel to represent him at sentencing.  Because we can conceive a plausible explanation for counsel's failure to object, we reject

19

Cresham's claim that he received ineffective assistance of counsel.

## DISPOSITION

We affirm the judgment.


                                    BIGELOW, P. J.

We Concur:



GRIMES, J.



STRATTON, J.