Filed 10/26/21  P. v. Smith CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DERELL MUSANTHA SMITH,<br><br>Defendant and Appellant. | F079519<br><br>(Stanislaus Super. Ct. No. 4002672)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Dawna F. Reeves, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING AND DISSENTING OPINION**

## INTRODUCTION

Appellant and defendant Derell Musantha Smith was convicted of four felonies and sentenced to a third strike term after he tried to drive over his estranged spouse and then stabbed her. On appeal, he contends the court improperly admitted evidence of his prior acts of domestic violence and abused its discretion when it denied his request to dismiss four of his five prior strike convictions. Defendant further asserts certain fees must be stricken, and the abstract of judgment must be corrected.

We order the abstract of judgment corrected and otherwise affirm.

## FACTS

At the time of trial in 2019, Shannon Smith (Ms. Smith) had been married to defendant for 10 years, and they had a six-year-old child.

**Prior domestic violence incidents[1]**

Ms. Smith testified that in 2016, she was living in Dallas with defendant and their child, and two domestic violence incidents occurred.

Ms. Smith testified the first incident occurred sometime in 2016. She was in a car with defendant and their child, and they were stopped near a park. They argued, and defendant used a pocketknife to stab her in the leg three times. She did not require medical attention and did not report the incident to the police. Ms. Smith admitted she consumed methamphetamine the day before the stabbing incident, and she was using drugs "off and on" at that time.

Ms. Smith testified another incident occurred on a different day from the stabbing incident, in December 2016. Defendant, Ms. Smith, and their child were still in Dallas and staying at a friend's house. Defendant "beat [her] up" with his fists, gave her "black eyes and a busted lip," and she called the police. Ms. Smith admitted that when the police interviewed her, she said that she hit her own face with a closed fist in frustration

---

[1] In issue I, *post*, we will address defendant's contentions that the trial court erroneously admitted evidence of his prior acts of domestic violence under Evidence Code section 1109.

2.

because they were arguing. The police escorted her to a shelter that night. Ms. Smith also admitted she used methamphetamine a few nights before this incident.

After the second incident, Ms. Smith called her family, and they sent her a bus ticket so she could get back to Modesto. She stopped using methamphetamine, separated from defendant, and returned to Modesto.

**Ms. Smith obtains custody of their child**

Ms. Smith testified when she returned to Modesto, she filed a child custody action against defendant in California.

At trial, defendant testified that after Ms. Smith left him in Dallas in December 2016, he had custody of their child and they moved to Arkansas. Defendant further testified that his child "forcibly" removed from his custody and sent to live with Ms. Smith in California.[2]

## THE CHARGED OFFENSES

The charged offenses are based on defendant's actions on February 22, 2017, when defendant and Ms. Smith were scheduled to attend a child custody hearing at Stanislaus County Superior Courthouse in Modesto.

**Defendant confronts Ms. Smith at the courthouse**

Ms. Smith believed the hearing was supposed to start at 9:00 a.m. and drove to the courthouse with her friend, Deameatri Johns. As they looked for a parking spot, Ms. Smith saw defendant's Suburban SUV parked in the area. Ms. Smith and Mr. Johns parked two blocks away from the courthouse.

Ms. Smith and Mr. Johns walked to the courthouse and waited at an intersection to cross the street. Defendant drove up next to them in his SUV. Ms. Smith testified

---

[2] Ms. Smith testified that in January 2017, she went to Arkansas, where defendant was living with their daughter. She knew a police report was filed about her visit and that some allegations were made against her.

defendant told her, " 'Bitch, court is over. Where is my daughter?' " Ms. Smith did not respond.

Ms. Smith testified that as she was about to cross the street, defendant drove forward and tried to hit her with his SUV. Ms. Smith stepped back to avoid defendant's vehicle, and it came within an inch of her. Defendant did not try to stop or brake, and he drove away.

Ms. Smith and Mr. Johns went into the courthouse and continued upstairs to the courtroom. There she learned she was late for the hearing, and it had to be rescheduled. They waited for the elevator and when the doors opened, defendant was inside. They got into the same elevator; Ms. Smith did not talk to him. Ms. Smith testified defendant and Mr. Johns had a cordial conversation about meeting at a park in an hour so he could see his child, and they exchanged telephone numbers. They walked out of the courthouse, and Ms. Smith and Mr. Johns went in the opposite direction from defendant.

**Defendant attacks Ms. Smith in the alley**

Ms. Smith and Mr. Johns headed back to their car and walked through an alley.

Ms. Smith was suddenly hit from behind by a vehicle that had driven through the alley, near the side of Wells Fargo bank. She fell to the ground and was stunned. She realized she had been hit by defendant, who was driving his Suburban SUV. Mr. Johns helped Ms. Smith get up, and he ran to get their car.

Defendant got out of his vehicle, reached down to get something from the driver's door, and confronted Ms. Smith against a wall. Ms. Smith testified defendant held a long knife with a wooden handle; and stabbed her in the chest area several times. Ms. Smith fell to the ground and defendant continued to stab her. As he stabbed her, defendant said more than once, " 'I'm going to kill you bitch.' "

Defendant picked up Ms. Smith's purse and papers from the ground. Defendant also picked up Ms. Smith, "threw her" into his SUV, and tried to force her to stay inside. Ms. Smith resisted and kicked against the interior of the SUV's door. Defendant said he

4.

would kill her if she did not stop kicking, and Ms. Smith gave up because she believed his threat.

Ms. Smith testified defendant closed the SUV's door on her, and then got into the driver's seat. Ms. Smith used the opportunity to open the door next to her and jumped out of defendant's SUV. She fell to the ground because she felt "kind of wobbly" from the assault.

Ms. Smith remained on the ground and was lying on her back. She testified that defendant backed up his SUV toward her position. She raised her leg, and the vehicle's rear bumper hit her leg and hip but not the rest of her body. Defendant drove forward and left the scene.

**The witness**

Kimberly Swehla was in the alley by Wells Fargo bank and heard tires screech to a stop. She saw a woman jump out of an SUV and heard the woman and a man yelling in very angry voices. She never saw the man or who was driving the vehicle. The woman was lying behind the SUV, the vehicle backed up toward her, and Ms. Swehla believed the driver was going to kill the woman. Ms. Swehla was with her young child, and they turned away so the child would not see what was going on. She heard the SUV screech away from the alley. Ms. Swehla testified that bystanders helped the woman into the nearby bank. Ms. Swehla saw blood on the ground in front of the bank.

**The security video**

Defendant attacked Ms. Smith near a business with a security camera. The police obtained the video, and it was introduced as a trial exhibit. Ms. Smith narrated the video when it was played for the jury. She stated the video showed defendant as he stabbed her multiple times, continued to stab her when she fell, threw her into his vehicle and struggled to close the door on her, backed his vehicle over her, and drove away.[3]

---

[3] This court has reviewed the video and it is consistent with Ms. Smith's description of the incident.

5.

**Ms. Smith's injuries**

Ms. Smith testified she was taken to the hospital and received stitches for stabs wounds on her arms and breasts. She also had stab wounds on other parts of her body that did not need stitches, and bruises from being hit by defendant's vehicle.

Ms. Smith's emergency room records were introduced as trial exhibits. According to the records, Ms. Smith received a general examination that showed she was alert and oriented, and there was no notation that she was intoxicated or under the influence. Ms. Smith had a "small 2 [centimeter] superficial skin tear to the right anterior chest wall, just under the right breast," a "4.5 [centimeter]" laceration "to the left anterior chest wall" near the left breast; a "large 12 [centimeter] gash to the right dorsal forearm area," and a "large 12 [centimeter] laceration" to the left forearm."

On her right forearm, Ms. Smith required a "complicated laceration repair" of 12 centimeters, and received nine "buried" sutures, with 16 sutures and six sutures in two layers on the edges. She received six sutures on the 4.5-centimeter wound on her left chest.[4]

The prosecution also introduced photographs that showed numerous bruises over her body and a lengthy row of stitches on one arm.

### DEFENDANT'S TRIAL TESTIMONY

Defendant testified that he remained in Arkansas after Ms. Smith obtained custody of their child. He was ordered to appear in Modesto to protect his custody rights, so he

---

[4] At trial, Ms. Smith testified she received five or six stitches to the stab wound on her left breast, "193" stitches on the inside of her arm, and "184" stitches on the outside of her arm.

In closing argument, the prosecutor cited the emergency room records and stated defendant stabbed Ms. Smith four times: in the torso, both breasts, and the stomach, and her arm was cut during the infliction of one of these wounds. The prosecutor acknowledged that Ms. Smith testified she received over 100 stitches but asked the jury to review the medical records that showed "she received a total from her arm, I believe, she had 16, nine, and then another five or so on her breasts, so a total of 31 stitches that she received from the defendant's actions."

6.

quit his job and drove to Modesto to attend the court hearing on February 22, 2017. Defendant testified the hearing started at 8:30 a.m., but Ms. Smith did not appear. Defendant was upset because she failed to show up.

Defendant returned to his vehicle and drove away from the courthouse. He saw Ms. Smith walking with an unknown man (later identified as Mr. Johns). Defendant believed she was "high." Defendant did not explain why he thought she was "high," but admitted he stopped at the curb, called Ms. Smith a "bitch," and yelled about missing court. He denied that he tried to hit her with his vehicle.

Defendant testified that he saw Ms. Smith and Mr. Johns walk to the courthouse, so he parked and walked back to the building. Defendant met Ms. Smith and Mr. Johns in the courthouse elevator. Defendant tried to talk to Ms. Smith, but she would not respond. Mr. Johns talked to him instead. Defendant made arrangements with Mr. Johns to meet them in a park later so defendant could see his child. As they left the courthouse, defendant told Ms. Smith to bring her car to the meeting so she could get their child's possessions from him.

Defendant testified he got into his Suburban SUV and started to drive away. He saw Ms. Smith in the alley, and she was talking and laughing with Mr. Johns and another man. He believed Ms. Smith was "probably doing some dope." He decided to talk to them to confirm what time they were going to meet at the park. He drove around the block and turned into the alley. As he drove toward Ms. Smith, his cell phone went off and he looked down at it. He felt a "boom," and realized something hit his car. Defendant testified he accidentally hit Ms. Smith with his vehicle, but he was not going fast.

Defendant heard Ms. Smith call out. He turned his steering wheel and tried to park but hit another car. He knew she was "high," and she probably believed he tried to hit her.

7.

Defendant got out of his SUV to check on Ms. Smith, and Mr. Johns ran away. Defendant leaned down to check on her, and Ms. Smith pulled a knife on him. Defendant told her to give him the knife and she refused. He tried to take the knife from her and pushed her to the ground. Ms. Smith called out that she could not feel her arm, and he realized she had stabbed herself.

Defendant acknowledged the security video showed he may have reached for something as he got out of his SUV, and it also showed his arm going back and forth in a stabbing motion as he leaned over Ms. Smith. Defendant claimed he did not grab anything, he did not have a knife, and he did not stab her. Defendant insisted Ms. Smith stabbed herself, and her wounds were self-inflicted. He said his arm went back and forth as he tried to stop her from stabbing him or herself. Defendant said Ms. Smith punched herself during a previous incident and blamed him.

Defendant offered to take her to the hospital because of the stab wounds. Ms. Smith said she would walk, but asked defendant to retrieve her purse from the ground. Ms. Smith voluntarily got into his SUV and said they should leave before the police arrived. Defendant threw her purse inside the SUV, but the door caught on the purse, and he had to slam it shut. Defendant got into the driver's seat and did not realize that she got out of his vehicle. When he saw that the back door was open, he reached into the backseat, accidentally hit the gear shift as he pressed on the accelerator, and his vehicle went backwards. He left the scene because he believed Ms. Smith was trying to trick him by jumping out of his SUV. He left town because he feared Ms. Smith was going to blame him for everything.

Defendant admitted he had misdemeanor convictions for shoplifting in 2015 and grand theft and petty theft in 2014. Defendant also admitted he used methamphetamine when he lived with Ms. Smith.

As for the prior domestic violence acts, defendant said he argued with Ms. Smith, but he did not stab her in the leg during the first incident. Defendant said the second

8.

incident occurred because he confronted her about using drugs in front of their child, they argued, and she hit herself in the eye and claimed he did it. Defendant testified the Dallas police investigated the second incident and allowed him to leave with their child.

**Rebuttal evidence**

Ms. Smith testified on rebuttal that on the day of the charged offenses, she was not using methamphetamine, she did not pull a knife on defendant, and he did not try to help her during the entire incident.

## PROCEDURAL BACKGROUND

On July 13, 2017, an information was filed in the Superior Court of Stanislaus County that charged defendant with committing the following offenses against Ms. Smith: count 1, attempted premeditated murder (Pen. Code, §§ 664, 187, subd. (a));[1] count 2, kidnapping (§ 207, subd. (a)), counts 3 and 6, assault with a deadly weapon, a vehicle (§ 245, subd. (a)(1)); count 4, battery on a spouse or cohabitant (§ 273.5, subd. (a)); and count 5, criminal threats (§ 422, subd. (a)).

As to counts 1 and 4 it was alleged that defendant inflicted great bodily injury (§ 12022.7, subd. (a)). As to counts 1, 2, 4, and 5, it was alleged that he personally used a deadly weapon, a knife, in the commission of the offenses (§ 12022, subd. (b)). It was also alleged that defendant had five prior strike convictions, and five prior serious felony enhancements (§ 667, subd. (a)).[5]

**Trial and verdicts**

On March 20, 2019, the prosecution's case began with the presentation of evidence.

On March 27, 2019, the jury found defendant not guilty of count 1, attempted murder, and guilty of the lesser included offense of attempted voluntary manslaughter; and found the great bodily injury and deadly weapon enhancements true.

---

[5] On March 27, 2019, an amended information was filed that corrected the dates and offenses for the prior conviction allegations.

As to count 2, defendant was found not guilty of kidnapping, and convicted of the lesser included offense of attempted kidnapping; the deadly weapon enhancement was found not true.

Defendant was convicted as charged of count 3, assault with a deadly weapon, a vehicle, based on defendant's act of backing his SUV over Ms. Smith in the alley at the end of the incident; and count 4, battery on a spouse or cohabitant, and the enhancements for count 4 were found true.

Defendant was found not guilty of count 5, criminal threats, and count 6, assault with a deadly weapon, a vehicle, based on the incident when Ms. Smith was walking to the courthouse, was about to cross the street, and he tried to hit her with his vehicle.

On March 28, 2019, the trial court found the prior conviction allegations true.

**Sentencing**

The court denied defendant's motion to dismiss the prior strike convictions, found he was statutorily ineligible for probation, and imposed an aggregate third strike term of 25 years to life plus nine years as follows: count 1, attempted voluntary manslaughter, 25 years to life, plus five years for the prior serious felony enhancement, three years for the great bodily injury enhancement, and one year for the deadly weapon enhancement; count 2, attempted kidnapping, 25 years to life plus five years for the prior serious felony enhancement, with the entire term to be served concurrently to count 1; and stayed the terms and enhancements imposed for counts 3 and 4 pursuant to section 654.

On June 19, 2019, defendant filed a notice of appeal.

## DISCUSSION

### I.     The Court Properly Admitted the Prior Acts of Domestic Violence

Defendant contends the court improperly admitted the prior acts of domestic violence as character and propensity evidence under both Evidence Code section 1101,

10.

subdivision (b) and section 1109.[6]  Defendant argues this evidence was inflammatory, prejudicial, and violated existing laws prohibiting propensity evidence.  Defendant further argues section 1109 is unconstitutional and violates his due process rights.

## A.　*Section 1109*

We begin with the admissibility of prior acts of domestic violence.  " '[E]vidence of a person's character' is generally inadmissible 'when offered to prove his or her conduct on a specified occasion.'  [Citation.]  That general rule does not 'prohibit[] the admission of evidence that a person committed a crime … or other act' to prove something other than a person's 'disposition to commit such an act.'  [Citation.]  For example, other-acts evidence may be admissible to prove motive [or] intent ….'  [Citation.]"  (*People v. Baker* (2021) 10 Cal.5th 1044, 1088–1089 (*Baker*).)

"The general rule against admission of 'so-called "propensity" or "disposition" evidence' is also subject to exceptions.  [Citations.]  [S]ection 1108 provides an exception to the general rule and permits evidence that a defendant accused of a sexual offense has committed another sexual offense, potentially showing a propensity to do so.  [Citation.]  The exception set out in … section 1109 applies to certain evidence that a defendant accused of an offense involving domestic violence has committed other domestic violence.  [Citation.]  Both sections apply only if the evidence 'is not inadmissible pursuant to Section 352.'  [Citations.]"  (*Baker, supra*, 10 Cal.5th at p. 1089.)

"Section 1109 provides, in relevant part, 'in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352.'  [Citation.]  '[T]he California Legislature has determined the policy considerations favoring the exclusion of

---

[6] All further references to sections 1101, 1109, and 352 are to the statutes in the Evidence Code.

11.

evidence of uncharged domestic violence offenses are outweighed in criminal domestic violence cases by the policy considerations favoring the admission of such evidence.' [Citation.] As a result, section 1109 'permits the admission of defendant's other acts of domestic violence for the purpose of showing a propensity to commit such crimes. [Citation.]' [Citation.] Section 1109 'reflects the legislative judgment that in domestic violence cases, as in sex crimes, similar prior offenses are "uniquely probative" of guilt in a later accusation.' [Citation.]" (*People v. Kerley* (2018) 23 Cal.App.5th 513, 531 (*Kerley*).)

Evidence admissible under section 1109 "is subject to exclusion under section 352 if the probative value of the evidence is outweighed by a danger of undue prejudice. [Citation.] ' "The 'prejudice' referred to in … section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, 'prejudicial' is not synonymous with 'damaging.' " ' [Citation.]" (*People v. Megown* (2018) 28 Cal.App.5th 157, 164 (*Megown*); *Kerley, supra*, 23 Cal.App.5th at p. 532.)

"The record must affirmatively show that the trial judge did in fact weigh prejudice against probative value, but no more is required. [Citation.] We review the trial court's exercise of discretion in admitting evidence under section 352 for abuse and will not disturb the court's ruling 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*Megown, supra*, 28 Cal.App.5th at p. 164; *Kerley, supra*, 23 Cal.App.5th at p. 532.)

With this background in mind, we turn to the procedural history of the court's decision to admit evidence of defendant's prior acts of domestic violence.

**B.**    *The Prosecution's Motion*

Prior to trial, the prosecutor filed a motion to introduce defendant's prior acts of domestic violence pursuant to section 1109. The prosecutor's motion was not based on section 1101, subdivision (b).

The prosecutor intended to introduce evidence of three alleged prior acts: (1) an incident where defendant put a gun in Ms. Smith's mouth; (2) an incident that occurred when they were in Dallas, and defendant stabbed her in the leg with a pocket knife; (3) another incident that occurred in Dallas, where Ms. Smith reported to the police that defendant hit her in the face with a closed fist, and choked her around the neck with his hands. Defendant was not arrested or convicted of any of these prior incidents.

Defense counsel objected to the evidence, and the court granted counsel's request for a pretrial evidentiary hearing pursuant to section 402.

**C.**    *Evidentiary Hearing*

At the evidentiary hearing, Ms. Smith was the only witness. She testified about the first incident that occurred when she was living in Louisiana with defendant, sometime between 2009 and 2011. They were arguing, and defendant retrieved a Ruger nine-millimeter gun from the closet and put the gun in her mouth. She believed he tried to pull the trigger while the gun was in her mouth, but the safety was on. She did not report this incident to the police.

Ms. Smith testified the second incident occurred in Dallas in 2016, when she was in a car with defendant and their daughter. Defendant stabbed her leg three times with a pocketknife and said he did not want her to go anywhere. She did not need medical attention. She was going to report this incident, but defendant talked her out of it and promised not to do it again.

Ms. Smith testified the third incident occurred after the stabbing, when they were still in Dallas. Defendant choked and hit her. She reported this incident to the police. Her family sent her a bus ticket and she returned to California.

**D.** *The Parties' Arguments*

Defense counsel argued the firearm incident was "extremely prejudicial just given the horrible nature of that action," and the jury might "give it more weight than it actually should be given." Defense counsel also argued that the prior stabbing incident was also prejudicial because defendant was charged with using a knife in this case.

The prosecutor replied, "[T]hese are exactly the types of incidents that [section] 1109 was made for" because the statute "allows for prior acts of domestic violence whether or not there was an arrest or conviction." The prosecutor further argued that the incidents were highly probative and not remote in time.

**E.** *The Court's Ruling*

The court held the two incidents in Dallas, where defendant stabbed and punched Ms. Smith, were admissible, and it excluded the firearm incident.

> "[S]ection 1109 allows the People to present evidence of propensity in domestic violence situations. The only exclusion is for remoteness and balancing under section 352.
>
> "When I look closely at these incidents, I'm seeing that Incident Number 1 [the firearm incident], occurring sometime between 2009 and 2011 that she describes as a loaded gun being placed in her mouth with the trigger pulled, is inflammatory. When I compare that to the other two, I'm not seeing that it adds anything else except for additional prejudice. The nature of that offense, in my view, is just as inflammatory if not more than the current incident.
>
> "Prejudicial value is not the only consideration. I also have to consider its probative effect and the consumption of time that it might take as well as trying to avoid giving a false picture to the jury.
>
> "In my view, Incidents 2 and 3 [the stabbing and punching incidents] sufficiently characterize the defendant's background without the undue prejudice of the first incident, Incident Number 1 [the firearm incident].
>
> "The problems that I have with Incident Number 1 are the details are extremely sparse but extremely inflammatory. The victim could barely remember when it happened, only being able to limit it to a span of about three years.

14.

"The problem that I see with it is it doesn't add anything in addition to Counts 1 and 2 except for the use of the firearm, which in the context that she described is highly inflammatory.

"It … didn't take a whole lot of time to get the information from her. I don't expect that Incidents 2 or 3 are going to take a lot of time. But I think that the People's goal in establishing a pattern of violent or domestic violence history for [defendant] is adequately shown by Incidents 2 and 3, and the addition of Incident Number 1, I think, presents a problem because of the nature of the allegations."

## F.    *Trial Evidence, Argument, and Instructions*

As set forth above, Ms. Smith briefly testified at trial about the prior acts. Defendant also testified about the charged offenses, denied the stabbing incident occurred, and claimed Ms. Smith punched herself during the second incident.

In closing argument, the prosecutor extensively reviewed the evidence in support of the charged offenses, and then addressed the prior acts evidence. The prosecutor argued that in evaluating why Ms. Smith believed defendant's threats to kill her, as charged in count 5, the jury could consider her testimony about the "prior incidents in Dallas where he actually used a knife on one occasion and then hit her on a couple of times on another occasion right before she actually came here."

Defense counsel argued the People failed to prove the prior acts by a preponderance of the evidence because Ms. Smith did not report the stabbing incident to the police or seek medical attention, and defendant was not arrested when she reported the second incident.

The jury was instructed pursuant to CALCRIM No. 852 that it could consider the prior acts of domestic violence "only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged domestic violence," defined the preponderance standard, and that the jury had to disregard the evidence if the People failed to meet that burden. The instruction further stated:

"If you decide that the defendant committed the uncharged domestic violence, you may but are not required to conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and,

15.

based on that decision, also conclude that the defendant was likely to commit and did commit battery on a spouse, as charged here. [¶] If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider among all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of a battery on a spouse. The People must still prove each charge and allegation beyond a reasonable doubt. Do not consider this evidence for any other purpose."

## G. *Analysis*

Defendant raises several arguments why the court erroneously admitted the prior acts evidence.

### 1. Section 1101

First, defendant insists the prosecution moved to introduce the prior acts evidence under both section 1101, subdivision (b), and section 1109, the court granted the motion based on both statutes, and the evidence was inadmissible. As explained above, however, the prosecution's motion was solely based on section 1109, the court expressly relied on that section to admit the prior acts of domestic violence, and it did not rely on section 1101.

### 2. Constitutionality

Defendant next asserts the introduction of prior acts of domestic violence under section 1109 resulted in inadmissible propensity evidence that violated his constitutional rights to due process and a fair trial.

As defendant acknowledges, the California Supreme Court has rejected similar constitutional challenges to prior sexual acts evidence admitted under section 1108, which mirrors section 1109. (*People v. Falsetta* (1999) 21 Cal.4th 903, 915.) In addition, constitutional challenges to section 1109 based on due process, equal protection, and fair trial arguments have also been rejected based on *Falsetta*. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 529; *People v. Cabrera* (2007) 152 Cal.App.4th 695, 703–704; *People v. Price* (2004) 120 Cal.App.4th 224, 240; *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095–1096; *People v. James* (2000) 81

16.

Cal.App.4th 1343, 1353; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1309–1310; *People v. Brown* (2000) 77 Cal.App.4th 1324, 1328–1329, 1334 & fn. 14; *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1027–1028; *People v. Johnson* (2000) 77 Cal.App.4th 410, 417–420.)

Defendant acknowledges these holdings but insists *Falsetta* was wrongly decided and urges this court to reconsider the question because he has raised the issue to preserve federal review.

Moreover, the California Supreme Court in *Baker* recently reaffirmed *Falsetta,* declined a similar request to reconsider the issue, and approved cases that have rejected any distinction between the constitutional analysis of sections 1108 and 1109. (*Baker, supra,* 10 Cal.5th at pp. 1089–1090 & fn. 6.) We are bound by the California Supreme Court's rulings in *Falsetta* and *Baker*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456.)

### 3. Instructions

Defendant next argues CALCRIM No. 852 violated his constitutional rights because it allowed the jury to unfairly consider the prior acts as propensity evidence. The language in CALCRIM No. 852 has been found constitutional to instruct the jury on the consideration of section 1109 evidence. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1012; *People v. Johnson* (2008) 164 Cal.App.4th 731, 739–740; *People v. Reyes* (2008) 160 Cal.App.4th 246, 251–252; *People v. Pescador* (2004) 119 Cal.App.4th 252, 261–262.)

### 4. Prejudice

Defendant raises several arguments as to why the section 1109 evidence was prejudicial in this case. However, the court did not abuse its discretion when it decided to admit two of the three proffered prior acts of domestic violence. It was well aware of its discretion under section 352 and considered the probative value of each prior act against its possible prejudicial effect. The court recognized the prejudicial impact of admitting

the prior act involving the gun, particularly given Ms. Smith's sparse recollection of the incident at the evidentiary hearing.

The court did not abuse its discretion when it held the other two acts were more probative than prejudicial and thus admissible. Ms. Smith's limited trial testimony about the two admissible acts was not more serious or inflammatory than her testimony about the charged offenses, and particularly the video of the entire incident – that defendant was angry about the child custody matter, followed Ms. Smith in and out of the courthouse, confronted her in the alley, stabbed her, and tried to hit her with his SUV. (*People v. Rhoades* (2019) 8 Cal.5th 393, 413; *People v. Jones* (2012) 54 Cal.4th 1, 51.)

The two prior acts occurred in 2016, a few months before the charged offenses, which was also probative because "it is the frequency, regularity, and severity [of the prior incidents] that infuses this propensity evidence with probative strength. [Citation.]" (*Kerley, supra*, 23 Cal.App.5th at p. 536.) The evidence about the prior acts " 'was highly relevant and probative because it created a strong inference that [defendant] had a propensity to commit the [current] acts [the victim] described.' " (*Ibid.*)

Defendant argues the court should have excluded the prior acts under section 352, based on the general argument that "extensive evidence of the uncharged domestic violence offenses was exceedingly prejudicial because it made [him] out to be a serial domestic violence offender," he was not charged or convicted of any of the prior offenses, and the jury may have convicted him of the charged offenses to punish him for the prior acts. Such arguments are refuted by the legislative intent behind the enactment of section 1109:

> "[T]he Legislature concluded that, in domestic violence cases in particular, a history or pattern of domestic violence is very probative. [¶] ' "The propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases. *Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity. Without the propensity inference, the escalating nature of domestic violence is likewise masked. If*

18.

we fail to address the very essence of domestic violence, we will continue to see cases where perpetrators of this violence will beat their intimate partners, even kill them, and go on to beat or kill the next intimate partner. Since criminal prosecution is one of the few factors which may interrupt the escalating pattern of domestic violence, we must be willing to look at that pattern during the criminal prosecution, or we will miss the opportunity to address this problem at all." [Citation.]' [Citation.]" (*Kerley, supra*, 23 Cal.App.5th at pp. 535–536, italics added.)

As to defendant's claim of error, "the prejudicial effect of the evidence is increased if the uncharged acts did not result in a criminal conviction. This is because the jury might be inclined to punish the defendant for the uncharged acts regardless of whether it considers the defendant guilty of the charged offense and because the absence of a conviction increases the likelihood of confusing the issues, in that the jury will have to determine whether the uncharged acts occurred. [Citation.] The potential for prejudice is decreased, however, *when testimony describing the defendant's uncharged acts is no stronger or more inflammatory than the testimony concerning the charged offense*. [Citation.]" (*People v. Tran* (2011) 51 Cal.4th 1040, 1047, italics added.)

As already explained, Ms. Smith's brief trial testimony about the two prior acts was not more serious or inflammatory than the evidence of the charged offenses, including the video of the entire incident. Moreover, the record strongly refutes any inference that the jury's verdicts were based on the prior acts evidence since defendant was not convicted of the most serious charges of attempted murder and kidnapping. Instead, the jury found him guilty of the lesser included offenses of attempted voluntary manslaughter and attempted kidnapping, and not guilty of criminal threats and the assault with a deadly weapon charge based on the incident at the intersection.

Defendant also argues the prejudicial nature of the evidence was "exacerbated" by the prosecutor's "damaging" closing argument. The record undermines this assertion. As noted above, the prosecutor argued that in evaluating why Ms. Smith believed defendant's threats that he was going to kill her, as charged in count 5, the jury could consider her testimony about the "prior incidents in Dallas where he actually used a knife

on one occasion and then hit her on a couple of times on another occasion right before she actually came here." Defense counsel did not object to the prosecutor's argument, the argument did not violate section 1109, and it was not prejudicial, particularly since the jury found him not guilty of criminal threats.

Defendant further asserts the prior acts should have been excluded because they were not similar to the charged offenses since the first prior incident involved an argument and an alleged stabbing, the second prior incident involved an argument and an alleged physical assault, and the charged offenses did not involve an argument but instead alleged he committed "assaultive conduct with a vehicle." Defendant concludes the prior acts were "so dissimilar and inflammatory" to the charged offenses that they should have been excluded.

"In the context of … sections 1108 and 1109, a defendant's propensity to commit sexual offenses or domestic violence is not an extraneous factor; it is relevant to the guilt of the accused – and evidence tending to show that propensity has probative value." (*Baker, supra*, 10 Cal.5th at p. 1089.) It has been held that as to section 1108 evidence, "there is no requirement that the charged and uncharged offenses be so similar that evidence of the prior acts would be admissible under section 1101. If such strict similarities were required, 'section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108.' [Citation.]" (*People v. Hernandez* (2011) 200 Cal.App.4th 953, 966.)

The prior domestic violence acts in this case were similar enough to the charged domestic violence offenses, committed against the same victim, "that the jury could reasonably draw an inference of propensity to commit crimes of this nature. [Citation.]" (*People v. Rhoades, supra,* 8 Cal.5th at p. 413.) Both the prior acts and the charged offenses involved defendant's use of violence against Ms. Smith, arising from his anger and frustration over her actions toward him. (See, e.g., *People v. Hoover*, *supra*, 77 Cal.App.4th at p. 1026.)

The court did not abuse its discretion and the prior acts evidence was properly admitted.

## II. The Court's Denial of the Motion to Dismiss the Prior Strike Convictions

Defendant argues the court abused its discretion when it declined to dismiss four of his five prior strike convictions and imposed a third strike sentence. Defendant asserts his prior convictions were old, he committed them when he was 19 or 20 years old, some of the offenses were committed at the same time, his subsequent offenses were misdemeanors, and he otherwise led a crime-free life.

### A. *Evidence of the Prior Strike Convictions*

Defendant waived his right to a jury trial on the prior conviction allegations. The prosecution introduced documentary evidence from the "[section] 969 package" consisting of the prior charging documents, minute orders, and abstracts of justice.

The court found true the allegations in the amended information that defendant had five prior strike convictions that occurred in case No. 278753 in 1992: four convictions for robbery (§ 211) and one conviction for assault with a firearm (§ 245, subd. (a)(2).

The prosecution's documentary evidence included the felony complaint and information in case No. 278753. Both charging documents were identical and alleged defendant committed four counts of robbery and one count of assault with a firearm, committed on January 14, 16, 23 and 31, 1992, with firearm enhancements as to all offenses (§ 12022.5).[7]

In October 1992, defendant pleaded guilty to the five felony counts and admitted the firearm enhancements. In January 1993, he was sentenced to 12 years in prison in that case. The abstract of judgment stated he was also sentenced to an additional

---

[7] As will be discussed in issue IV, *post*, the prosecution's documentary evidence about defendant's prior convictions is also relevant to defendant's separate appellate argument that the prior convictions were not "brought and tried separately" as required to prove the prior serious felony enhancement in section 667, subdivision (a)(1).

consecutive term of three years four months in prison based on a separate conviction for the sale of a controlled substance (Health & Saf. Code, § 11351.5), with an on-bail enhancement (§ 12022.1).

In 2000, defendant was released on parole. In June 2002, his parole was revoked, and he was returned to custody. He was again released on parole in September 2002. In April 2003, his parole was revoked, and he was returned to custody and again released on parole in August 2003. In February 2004, he absconded from parole, and he was again returned to custody in March 2004. In August 2004, defendant was discharged from parole.

**B.** ***Defendant's Motion to Dismiss the Prior Strike Convictions***

After the verdicts, defendant filed a motion to dismiss the prior strike convictions pursuant to section 1385. Defendant argued the prior strike convictions occurred 27 years ago, he was approximately 20 years old at that time, and his subsequent violations were "relatively minor" misdemeanor offenses.

**C.** ***The Prosecution's Sentencing Brief***

The prosecution's sentencing brief summarized the evidence in support of the five prior convictions.[8] As to the first robbery conviction: "On January 14, 1992, Joanne Bartlett was leaving work at approximately 10:49 p.m. As she got into her car[,] she saw Defendant approach her and point a gun in her face. Defendant demanded Bartlett give him all her money. Bartlett gave him the $26[] she had in her possession and fled."

As to the assault charge and second robbery conviction, which were committed on the same day: "On January 16, 1992, Billy Mosley was working at the Bait Barn on Yosemite Boulevard. Defendant walked into the store and pointed a revolver at Mosley and said, 'Give me all your money.' Mosley proceeded to take the money out of the cash register and into a paper bag. As Mosley reached down to get the paper bag Defendant

---

[8] Defendant did not object to the prosecutor's sentencing brief.

22.

fired the weapon and shot Mosley in the hip. Defendant continued to demand the money and took off with $200[].”

As to the third robbery conviction: “On January 23, 1992, Carolyn Dodd was at work when Defendant asked her if he could come in and use the restroom. Defendant then pulled out a gun and told her he was going to take all her money. A struggle ensued over the gun during which Defendant pushed Dodd causing her to fall to the ground. Defendant also told Dodd to take off her clothes, ripped the telephone cord out of the wall and closed all of the blinds. Dodd began screaming for help and that is when Defendant took the $5.00 Dodd had and ran out of the business.”

As to the fourth robbery conviction: “On January 31, 1992, Marcus Miller was working at a 7-11 on Coffee Road. Defendant came into the store, pulled a revolver from his coat and told Miller, ‘Give me your money and you won’t get hurt.’ Miller took approximately $25[] from the cash register and gave it to Defendant.”

Defendant also had prior convictions in 2002, for a misdemeanor violation of section 148, resisting arrest, and was placed on probation for three years and ordered to serve 10 days; in 2005, for a felony violation of Health and Safety Code section 11377, possession of a controlled substance, and sentenced to four years in prison;[9] in 2014, for a misdemeanor violation of section 487, grand theft, and placed on probation for three years; in 2014, for a misdemeanor violation of section 484, theft, and sentenced to 180 days in jail; and in 2015, for a misdemeanor violation of section 459.5, shoplifting of an amount less than $950, and placed on probation for three years.

**D.** *The Sentencing Hearing*

On June 10, 2019, the court heard arguments on defendant’s motion to dismiss the prior strike convictions and other sentencing issues.

---

[9] “With the passage of Proposition 47 on November 4, 2014, violations of Health and Safety Code section 11377 became misdemeanors.” (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1105.) Defendant never filed a petition to reduce his felony conviction to a misdemeanor.

The prosecutor argued the court should deny defendant's motion to dismiss based on "the nature of his prior offenses and the number of them, the … prior [robberies] … and the facts of each of those cases, one of which includes a firearm, a weapon, just like the crime in this case where he used a knife." He was released from prison in 2000, he had not been "free of any type of convictions or any type of criminal conduct" since that time, he had a subsequent felony and additional misdemeanors convictions, and he was still on probation when he committed the offenses in this case.

The prosecutor acknowledged defendant was convicted of lesser included offenses in this case but argued the surveillance video showed "the callousness and just the sheer violence" that defendant inflicted on "an otherwise defenseless victim," and he used both his car and his knife to attack her and try to kill her. The prosecutor argued that "given his history as well as the severity of both the prior crimes and this crime … it doesn't warrant the defendant striking any of his prior convictions in this case."

Defense counsel argued the court should dismiss four of the five prior strike convictions to avoid a third strike sentence, because the prior convictions occurred in 1992, and he was sentenced "decades ago" under a plea agreement. Defense counsel also argued his subsequent felony conviction for violating Health and Safety Code section 11377 would be a misdemeanor under current law but acknowledged defendant had not petitioned the court to reduce that prior conviction to a misdemeanor.

Defense counsel asserted defendant was only convicted of misdemeanor offenses after his release from prison, and the prior strikes occurred when he was 20 years old and made "some very bad decisions." Defendant interrupted, addressed the court, and said he was actually 17 years old when he committed the prior strike offenses, and he gave a false name at the time.

After hearing the arguments, the court decided to continue the sentencing hearing to review defendant's record and consider the three strikes issue.

24.

**E.     *The Court's Ruling***

On June 19, 2019, the court resumed the sentencing hearing, stated it had reviewed the record, and denied defendant's motion to dismiss four of the five prior strike convictions.

> "After a careful review of [defendant's] criminal history, and the nature of the underlying strikes, and the facts and circumstances in the current case, I cannot find that it supports a finding that [defendant] is outside of the purview of the three strikes intention or that it would be in the interests of justice to strike four of his prior five violent felonies."

The court found aggravating factors that defendant was engaged in extremely violent conduct, he was on misdemeanor probation when he committed the instant offenses, he had previously served a lengthy prison term, and his prior parole period was unsuccessful; it did not find any mitigating factors.  The court reviewed defendant's written statement to the court and found no "glimmer of remorse" but instead "expressions of dissatisfaction with the lifestyle and the conduct of [the victim], a relationship that he chose and maintained over the years."

The court denied probation and sentenced defendant to the aggregate third strike term of 25 years to life plus nine years.

**F.     *Section 1385***

The trial court has discretion to dismiss a prior strike conviction in furtherance of justice under section 1385.  (§ 1385, subd. (a); *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529–530.)  In considering whether to exercise its discretion, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

25.

We review the court's decision under section 1385 under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 375–377 (*Carmony*); *People v. Williams, supra*, 17 Cal.4th at p. 162.) " 'It is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony, supra*, 33 Cal.4th at p. 378.)

"[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper. [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*Carmony, supra,* 33 Cal.4th at p. 378.)

### G. *Analysis*

The trial court did not abuse its discretion when it denied defendant's motion to dismiss four of the five prior strike convictions. It reviewed the parties' respective briefs, listened to their arguments, and continued the sentencing hearing with the expressed

purpose to have more time to decide whether to dismiss the prior strike convictions. In denying defendant's motion, the court stated it conducted a careful review of defendant's criminal history, the nature of the prior strikes, and the facts of the current convictions, and declined to find defendant was outside the spirit of the "Three Strikes" law.

Defendant argues that the trial court abused its discretion because "it did not recognize that [he] had not yet fallen within the dark spirit of the three strikes law." Defendant renews the same assertions he made at the sentencing hearing – that he committed the strikes nearly 27 years before the charged offenses, he did so over "a short period of aberrant behavior," he led "a relatively crime-free life since then," and his subsequent convictions were misdemeanors except for the felony drug possession. The trial court obviously considered these same arguments and issues and declined to exercise its discretion.

Defendant also asserts that when he committed the prior strike offenses in January 1992, it was "only months after he turned 19 years old," citing an entry in the probation report that he was born in December 1972. Defendant concedes he was "not a juvenile" when he committed the prior strike offenses, but "his young age at that time renders him significantly less culpable than if he had committed the offense as a mature adult."[10]

---

[10] At the sentencing hearing, as defense counsel argued the court should dismiss the prior strike convictions, defendant interrupted and addressed the court, and stated he was 17 years old when he committed the prior strike offenses in January 1992, potentially raising the assertion that he was a juvenile, possibly born in 1975.

As conceded in his appellate brief, the record refutes defendant's assertion at the sentencing hearing that he was a juvenile when he committed the prior felony offenses. The prosecution's documentary exhibits to prove the prior convictions included his fingerprint card and the felony complaint in case No. 278273 in 1992, that identified him as "Derrick Derrell Smith" born in December 1973. In this case, the application for the arrest warrant was for "Derell Masantha Smith," born in December 1973. The felony complaint was filed against "Derell Musantha Smith" and stated he was born in December 1972 or December 1973. The arrest warrant, extradition documents, information, abstract of judgment, and probation report filed in this case identified

27.

The prosecution's summary of defendant's prior felony offenses in the sentencing statement, which defendant did not challenge or object to, refutes the claim that defendant committed impulsive or immature acts, and instead shows planning and maturity in how he carried out each offense. He picked vulnerable victims, he did not hesitate to shoot one victim who briefly appeared not to cooperate, and he may have intended to commit a sexual assault against an isolated victim that was thwarted when she resisted and screamed for help.

As for the current convictions, defendant waited until Ms. Smith was in a vulnerable position to assault her in the alley. Defendant concedes he committed serious offenses in this case, but asserts his conduct was "the unfortunate culmination of [his] frustration with his estranged wife, and their custody issues rather than the result of any premeditated criminal intent." Defendant apparently made this same argument in his letter to the court at the sentencing hearing, and the court expressly rejected his attempt to blame the victim for his assaultive and violent behavior.

We find the court did not abuse its discretion when it denied his motion to dismiss the prior strike convictions.

### III. The Fines, Fees, and Assessments

Defendant next argues the court improperly ordered him to pay the court security fees (§ 1465.8) and the criminal conviction assessments (Gov. Code, § 70373), because it found he did not have the ability to pay, and the matter must be remanded for the court to strike those assessments pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). To the extent such an argument may have been forfeited, defendant raises the alternative argument that defense counsel was prejudicially ineffective for failing to raise an ability to pay objection to the two assessments.

---

defendant as "Derell Musantha Smith," born in December 1972. Defendant was thus 19 years old when he committed the prior offenses.

## A. *The Sentencing Hearing*

The sentencing hearing was held on June 19, 2019, approximately five months after the decision in *Dueñas*. Defense counsel did not raise an objection under *Dueñas* or argue defendant lacked the ability to pay any fines or fees.

After the court imposed the third strike term of 25 years to life plus nine years, it turned to the fines and fees and stated:

> "You're ordered to pay a $300 state restitution fund fine. I will impose but stay a $300 parole revocation fine. That fine is stayed pending successful completion of parole. *I have reduced the state restitution fund fine to the minimum and avoided the statutory calculation finding that because of the length of sentence, [defendant] has an inability to pay and in favor of restitution in the other fines and fees that will be due.*
>
> "You're ordered to pay a $160 court security fee, a $120 criminal conviction assessment, *and because of the length of the sentence and in favor of the other fines*, I'm not going to impose any additional attorney's fees." (Italics added.)

The court thus imposed the minimum restitution fine of $300 (§ 1202.4, subd. (b)), suspended the parole revocation fine in the same amount (§ 1202.45), with victim restitution in an amount to be determined (§ 1202.4, subd. (f)); and also imposed court security fees of $160 (§ 1465.8; $40 per conviction) and criminal conviction assessments of $120 (Gov. Code, § 70373; $30 per conviction).

## B. *Analysis*

*Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under … section 1465.8 and Government Code section 70373. We also hold that although … section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that

29.

the defendant has the present ability to pay the restitution fine." (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.)[11]

Defendant acknowledges the court determined he had "an inability to pay" when it imposed the minimum restitution fine, but argues that given his "inability to pay, the court security fee and criminal conviction assessment were erroneously imposed and must be stricken." Defendant thus concludes "the fees were improperly levied" against him since the court found he "had an inability to pay," and the two fees must be stricken.

While the court did not cite *Dueñas,* the record strongly implies that it was aware of the decision because it expressly considered defendant's inability to pay when it set the restitution fine and imposed the fees. The court decided the minimum restitution fine of $300 was more appropriate instead of calculating the restitution fine based the statutory calculation in section 1202.4, subdivision (b)(2), using the number of felony counts (four) and length of his prison sentence (25 years to life plus nine years).[12] The court also decided to impose the minimum restitution fine, instead of using the statutory calculation, "in favor" of defendant's ability to pay the court security fees and criminal conviction assessments.

As for ineffective assistance, the defendant must "show that 'counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.' [Citations.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*People v. Woodruff* (2018) 5

---

[11] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

[12] "In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine … multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (§ 1202.4, subd. (b)(2).)

Cal.5th 697, 761–762.) There is no reasonable probability the court would have reduced or stricken the fees and assessments if defense counsel raised an objection, since the trial court had already expressly considered defendant's ability to pay when it imposed the restitution fine, fees, and assessments.

## IV.    Correction of Abstract of Judgment

Defendant contends the abstract of judgment must be corrected to show that only one section 667, subdivision (a)(1) prior serious felony enhancement was imposed because his five prior convictions were not brought and tried separately.

### A.    *The Prior Serious Felony Enhancements*

As explained in issue II, *ante*, it was alleged that defendant had five prior felony convictions (one assault with a firearm and four robberies), that were both prior strike convictions and prior serious felony enhancements (§ 667, subd. (a)).

Also as explained above, the evidence showed that all five prior convictions were brought and tried in the same action, case No. 278753 in 1992. The court found all prior conviction allegations true.

### B.    *The Sentencing Hearing*

At the sentencing hearing, the court imposed the third strike term of 25 years to life for count 1, attempted voluntary manslaughter, plus five years for the section 667, subdivision (a)(1) prior serious felony enhancement, three years for the great bodily injury enhancement, and one year for the personal use enhancement.

The court then stated:

> "And [defendant] suffered five [section] 667 (a) prior convictions, however, the Court is only adding five additional years consecutive [to count 1] finding that those five prior violent felony convictions were all brought and tried at the same time in the same complaint. So one five-year period is imposed for all five. That leaves a total state prison commitment on Count of 34 years to life in prison."

The court continued with sentencing and as to count 2, attempted kidnapping, imposed 25 years to life plus five years for the prior serious felony enhancement, with the

entire term to be served concurrently to count 1; count 3, assault with a deadly weapon, concurrent terms of 25 years to life, plus five years for the prior serious felony enhancement, with the entire term stayed pursuant to section 652; and count 4, battery on a spouse, a concurrent term of 25 years to life, plus five years for the prior serious felony enhancement, three years for the great bodily injury enhancement, and one year for the personal use enhancement, with the entire term stayed pursuant to section 654.

## C. *The Abstract of Judgment*

The abstract of judgment contains a separate section for enhancements, with the following preprinted instructions:

> "ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed or 'S' for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S)." (Capitalization in original.)

Under this heading, the abstract states that a five-year term was imposed for the section 667, subdivision (a)(1) enhancement attached to count 1; and that section 667, subdivision (a)(1) enhancements were imposed for counts 3 and 4 and were "stayed."

## D. *"Brought and Tried Separately"*

Section 667, subdivision (a)(1) provides that "[a]ny person convicted of a serious felony who previously has been convicted of a serious felony in this state … *shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately*. The terms of the present offense and each enhancement shall run consecutively." (Italics added.)

"[T]he requirement in section 667 that the predicate charges must have been 'brought and tried separately' demands that the underlying proceedings must have been formally distinct, from filing to adjudication of guilt." (*In re Harris* (1989) 49 Cal.3d 131, 136; *People v. Wiley* (1995) 9 Cal.4th 580, 585.) "Formal distinctions" include the

32.

use of separate case numbers and separate charging documents as well as the absence of evidence the cases have been otherwise consolidated. (*People v. Wagner* (1994) 21 Cal.App.4th 729, 737; *People v. Wiley,* at pp. 592–593.) Prior convictions arising from a single complaint are "not brought separately within the meaning of section 667[, subdivision] (a)(1) …." (*People v. Wiley,* at p. 592.)

As set forth in issue II, *ante*, and agreed to by the parties, defendant's five prior serious felony convictions were not brought and tried separately because they were charged in a single information and resulted in a single plea agreement in 1992. The parties also agree the court correctly imposed a single consecutive five-year enhancement attached to count 1. They disagree as to the disposition of the enhancements attached to counts 2, 3, and 4.

### E. *Jones*

In his opening brief, defendant argues the court was statutorily authorized to only find true and impose the single five-year term for the section 667, subdivision (a)(1) prior serious felony enhancement attached to count 1, as done at the sentencing hearing, because the prior convictions were not brought and tried separately. Defendant further argues the abstract must be corrected to show he only had one prior serious felony enhancement, because the trial court ordered the other four enhancements stricken since they were not brought and tried separately as required by section 667, subdivision (a)(1).

*People v. Jones* (2015) 236 Cal.App.4th 1411 (*Jones*) is virtually identical to the circumstances of this case. In *Jones*, the defendant was subject to multiple indeterminate third strike terms, and two prior serious felony conviction enhancements were found true. The section 667, subdivision (a)(1) enhancements were based on his prior convictions for robbery and attempted robbery, which had been charged together under the same case number and adjudicated in the same proceeding. At sentencing, the court imposed one five-year enhancement, and then stayed the second enhancement since the second prior conviction was not brought and tried separately. On appeal, the defendant argued the

33.

second enhancement should be stricken. The People conceded the two prior convictions were not brought and tried separately, but argued that by staying the second enhancement, the sentencing court did not violate the provisions of section 667, subdivision (a)(1). (*Jones*, at pp. 1414–1416.)

*Jones* rejected the People's argument and held "it is an *element* of the prior serious felony enhancement that the charges be 'brought and tried separately' and where, as in this case, multiple serious felonies were proven in a single prior proceeding, the People cannot prove more than one such enhancement exists." (*Jones, supra*, 236 Cal.App.4th at p. 1416.) *Jones* further held "the mere *imposition* of sentence for a prior conviction that was *not* brought and tried separately runs afoul of the statute, whether or not the sentence is executed." (*Ibid*.) "[U]nder section 654, a stayed sentence is one that has first been *imposed,* but because of some legal rule must be stayed to prevent the infliction of any *punishment* for such imposed sentence. Imposing a stayed sentence results in the *receipt* of a sentence, albeit one that is not executed absent some subsequent reason to lift the stay. [Citation.]" (*Ibid*.)

*Jones* explained the trial court's decision in that case to stay the second enhancement was erroneous since the court's "*finding* that two serious priors existed was itself erroneous, because those priors were not brought and tried separately." (*Jones, supra*, 236 Cal.App.4th at p. 1417.) *Jones* thus vacated the second prior serious felony enhancement that the court found true, imposed, and stayed pursuant to section 654. (*Id*. at pp. 1417–1418.)

As applied to the instant case, the trial court recognized the "brought and tried separately" requirement, correctly found one prior serious felony enhancement was true, and imposed the consecutive five-year term to the third strike sentence imposed for count 1. As in *Jones*, however, the court improperly found the other four prior serious felony enhancements were true and imposed five-year enhancements as part of the

concurrent sentence in count 2, and the sentences that were imposed and stayed in counts 3 and 4. (*Jones, supra*, 236 Cal.App.4th at pp. 1416–1417.)

**F.    *Williams***

The People rely on *People v. Williams* (2004) 34 Cal.4th 397, 404–405 (*Williams*) and argue that since the instant case involved the imposition of multiple third strike terms, the trial court was required to individually impose five-year enhancements as to each count. The People argue the court correctly imposed a concurrent five-year enhancement for count 2, and stayed the five-year enhancements imposed for count 3 and 4. The People state the court never intended to strike the enhancements, and the abstract of judgment must be amended to show the concurrent enhancement for count 2, and the stayed enhancements imposed for counts 3 and 4.

The People's reliance on *Williams* is misplaced because that case addressed whether the trial court must impose a five-year term for prior serious felony enhancements found true that were attached to each of multiple third strike sentences, or only once for the aggregate sentence. (*Williams, supra*, 34 Cal.4th at pp. 400–401.)

In addressing this issue, *Williams* observed that in the context of multiple determinate sentences, it was previously held that prior conviction enhancements only could be imposed once on the total aggregate sentence under section 1170.1. (*Williams, supra,* 34 Cal.4th at pp. 402–404.) *Williams* held this rule did not apply to the imposition of status-based enhancements on multiple indeterminate three strikes terms, because "[t]he Three Strikes law, unlike section 1170.1, does not draw any distinction between status enhancements, based on the defendant's record, and enhancements based on the circumstances of the current offenses ...." (*Id.* at pp. 404–405.) *Williams* thus concluded the trial court was required to impose five-year terms for the prior conviction enhancements that were found true, "individually to each count of a third strike sentence." (*Id.* at p. 405; *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1560.)

*Williams* did not address or nullify the requirement in section 667, subdivision (a)(1), that the five-year term for a prior serious felony enhancement shall be imposed only "for each such prior conviction on *charges brought and tried separately*." (§ 667, subd. (a)(1), italics added.) As explained above, this statutory requirement "demands that the underlying proceedings must have been formally distinct, from filing to adjudication of guilt." (*In re Harris*, *supra,* 49 Cal.3d at p. 136; *People v. Wiley, supra,* 9 Cal.4th at p. 585; see also *People v. Laanui* (2021) 59 Cal.App.5th 803, 821–822.) The prior serious felony conviction allegations that are not brought and tried separately cannot be found true or imposed under section 667, subdivision (a)(1), even if stayed. (*Jones, supra*, 236 Cal.App.4th at pp. 1416–1417.)

As applied to the instant case, even though defendant was subject to multiple indeterminate third strike terms, the court could impose prior serious felony conviction enhancements, either as concurrent or stayed terms, only if they were "brought and tried separately" as required by section 667, subdivision (a)(1). (*Jones, supra,* 236 Cal.App.4th at p. 1416.)

As in *Jones*, the court's true findings for the four prior serious felony enhancements attached to counts 2, 3, and 4, and the concurrent and stayed five- year terms respectively imposed for those counts, must be vacated and stricken, because they were not brought and tried separately. (*Jones, supra*, 236 Cal.App.4th at pp. 1416–1417.)[13]

---

[13] After the People relied on *Williams* in its responsive brief, defendant stated in his reply brief: "[I]t appears that the trial court properly imposed a … section 667, subdivision (a) enhancement as to the four counts of conviction. However, on count 2, a concurrent sentence was imposed. The sentences on counts 3 and 4 were stayed. The abstract of judgment shows five section 667, subdivision (a) enhancements. There should only be four. And, the abstract should also show that the enhancement as to count 2 was imposed concurrently; it was not stayed." We decline to accept defendant's agreement with the People's argument.

## **DISPOSITION**

The abstract of judgment is modified to strike the true findings and the five-year terms for the section 667, subdivision (a)(1) prior serious felony enhancements, previously reflected as "stayed," imposed concurrently for count 2, and imposed and stayed for counts 3 and 4.

As modified, the judgment is affirmed in all other respects. The trial court shall prepare and forward to all appropriate parties a certified copy of an amended abstract of judgment.


POOCHIGIAN, ACTING P. J.

I CONCUR:


SNAUFFER, J.


37.

SMITH, J., Concurring and Dissenting.

I respectfully dissent from the majority's resolution of the issue regarding fines, fees, and assessments. I would remand the matter for the court to reconsider—in light of *People v. Duenas* (2019) 30 Cal.App.5th 1157 and *People v. Son* (2020) 49 Cal.App.5th 565—the imposition of court facilities fines and criminal conviction assessments in this case. Otherwise, I concur with the majority opinion in all remaining aspects.

I disagree with the majority's conclusion that "the record strongly implies" the sentencing court "was aware of the [*Duenas*] decision." (Maj. opn., *ante*, at p. 30.) The *Duenas* decision, which arrived at novel holdings, was published only a few months before the sentencing in this matter. Given its recency and novel holdings, had the court applied the decision, it would have mentioned it. The fact that neither counsel, nor the court, mentioned *Duenas*, readily implies the court was not aware of it. Rather, the court seems to have assumed, per usual at that juncture in time, that the imposition of court facilities fees and criminal conviction assessments was mandatory, regardless of the defendant's ability to pay. (See Pen. Code, § 1465.8; Gov. Code, § 70373.)

To the extent the court found that defendant was unable to pay fines and fees, the court imposed the minimum restitution fine pursuant to Penal Code section 1202.4, based on preexisting *statutory* language to the effect that *this specific fine* could be reduced to the minimum amount if the defendant was unable to pay. Indeed, the court expressly stated it had "reduced the state restitution fund fine to the minimum" in favor of the "other fines and fees *that will be due*." (Italics added.)

The court's analysis indicates it believed the restitution fine could be reduced to the minimum based on the defendant's inability to pay, while the other fines would "be due" regardless. Had the court been aware of *Duenas*, it potentially would have factored in the defendant's inability to pay as to the other fines as well. I would therefore remand

the matter to permit the court to reconsider its imposition of court facilities fines and criminal conviction assessments in light of *Duenas* and its progeny.

SMITH, J.